The opinion of the Court was delivered at this term by
Jackson, J.
The determination of this cause depends on the sufficiency of the defendant’s second plea in bar. In that plea, he admits, in effect, that he was indebted to the intestate, as alleged in the declaration, and that the plaintiff is administrator, duly appointed in this state, of the effects of the deceased; but he alleges, in his defence, that, before the plaintiff" was so appointed administrator, he, the defendant, and one Philemon Gaylord, who were both inhabitants and * residents in Connecti- [ * 263 ] :ut, were duly, and according to the laws of Connecticut, appointed administrators of the effects of the said deceased, by a certain judge of probate there, who had the power of granting such administrations; that they gave bond to the said judge, with condition to exhibit an inventory, and to render their account to him; that they did accordingly exhibit an inventory of all the effects oi the deceased, which had come to their knowledge, including therein all the moneys due from the defendant to the deceased on the notes and demands specified in the plaintiff’s declaration; by means of all which the defendant is holden and obliged to account to the said judge of probate in Connecticut for all the said moneys.
The plaintiff assigns, as a special cause of his demurrer to this plea, that it is not alleged therein that the said Tibbals, at the time of his decease, or at any time before, resided or had his home in Connecticut; and, on examining the other parts of this record, it appears that such an averment was made in another plea; and being traversed, the issue was found for the plaintiff.
We are well satisfied that this point is wholly immaterial in the decision of this cause. The right of granting administration is not confined to the.state or country in which the deceased last dwelt. It is very common, and often necessary, that administration be taken out elsewhere. If a foreigner, or a citizen of any other of the United States, dies, leaving debts and effects in this state, these can never be collected by an administrator appointed in the place of his domicile ; and we uniformly grant administration to some person here for that purpose. This is the rule of the common law; and it is adopted, as we understand, in most of the United States, (a)
In such case, however, the administration granted here is considered as merely ancillary to the principal administration, granted in the jurisdiction where the deceased dwelt. It is true that such ancillary administration is not usually granted until an administrator is appointed in the place of * the de- [ * 264 ] ceased’s domicile. But this cannot be a necessary pre *244 requisite; for if so, and it should happen that administration is never granted in the foreign state, the debts due here, under such circumstances, to a deceased person could never be collected ; and the debts due from him to citizens of this state might remain unpaid.
The time of granting the respective letters of administration is also immaterial in this case. The administrators in Connecticut, if duly appointed, must collect all the effects of the deceased in that state, whilst the plaintiff will do the like here; and the residue, after paying the debts of the deceased, wherever collected or remaining, must be distributed according to the laws of the state in which the deceased dwelt. If it should appear, upon due exami nation in our Probate Court, that Tibbals had his home in Connecticut, we should cause the balance remaining in the hands of the administrator here, to be distributed according to the laws of Connecticut, or transmitted for distribution by the administrator in Connecticut, under the decree of the Probate Court there. And we cannot doubt that the Courts in Connecticut would, under like circumstances, adopt the same principles of comity and justice. (8), (a)
Having disposed of these two subordinate points, the great question in the cause still remains, — whether, if the debtor of an intestate be duly appointed administrator in another state, that circumstance, together with the others stated in this plea, furnishes" a sufficient defence. I say duly appointed in another state, because no objection is suggested to the jurisdiction of the court in Connecticut, unless it arise from the domicile of the deceased, which has been already considered ; and no fact is alleged, tending to impeach that grant of administration, or in any manner impair its legal effect.
If some other person had been appointed sole administrator in Connecticut, and had there received this debt of the defendant, it would undoubtedly have been a good bar to this action. [ * 265 ] Suppose, then, that such administrator, instead * of receiving the debt, had commenced an action for it there, and had recovered judgment before the commencement of this suit, the defendant being a citizen of that state, and subject to its laws; that would also be a bar to this action. Otherwise we must admit that one of our citizens, after a regular judgment against him for a debt in our courts, is justly liable to pay the samé debt again in any other state, where he may have property to be attached, or where his body may happen to be arrested.
*245 Still, in the cases supposed, the defendant could not allege in his defence a payment of the debt demanded. A legal obligation to pay to such judgment creditor exclusively seems equivalent to actual payment. It resembles, in this respect, a judgment on a process of foreign attachment against the debtor, as granishee or trustee of iiis creditor. It has been decided in this Court that such a judgment rendered in this state, and remaining unsatisfied, is a good bar to an action brought by the creditor; (9) and it is equally clear that a like judgment, rendered in any other state, having jurisdiction of the cause, would protect the debtor, if afterwards sued here. (10), (a)
The ground of the debtor’s defence in such a case has no resemblance to a discharge procured under the bankrupt or insolvent laws of another state. In the cases supposed, the foreign state, instead of releasing and discharging the debtor without payment, and depriving the creditor of all remedy for his debt, requires and compels the debtor to pay the debt, but in a different manner, or to a different person, than such as our laws would prescribe, if the debt had been originally sued here. If the foreign state have jurisdiction of the person of the debtor, and of course the right to enforce the payment of the debt, it cannot be important by what form of process, or in what manner, they exercise that right.. Any adjudication, or other proceeding whatever, pursuant to their laws, which is obligatory on the debtor there, must protect him against a suit for the same thing in another state.
* It is hardly necessary to remark that, in allowing [ * 266 ] this effect to such proceedings in a foreign state, we suppose them to have been conducted with good faith, and without any fraud or collusion on the part of the debtor, to the prejudice of third persons. Such fraud in the parties concerned will avoid the effect of a judicial proceeding, as well as of any act in pais. ' But it must be pleaded, if relied on by the adverse party, and can never be presumed by the Court.
That brings us to consider whether the defendant, upon the facts stated in his plea, was, at the commencement of this action, legally bound to pay and account for this debt in Connecticut, in such a manner that, if compelled to pay it on this suit, he may be twice charged for the same debt. It is material here to recollect that the debt now demanded is included and specified in the inventory exhibited by the administrators in Connecticut, as part of the goods and estate of the intestate, for which those administrators were accountable to the judge of probate there. The case might hats *246 been very different, if the defendant had denied that he owed this debt, and had refused to insert it in tile inventory, and to account for it as the property of the deceased.
It is well settled that, when the creditor makes his debtor exec utor, it is a discharge of the action for the debt. The reason sometimes given for this is, that the making of him executor operates by way of legacy or gift of the debt. Lord Holt, in the case of Wankford vs. Wankford, (11) says that it operates as a payment and release; as the same hand is to pay and receive the debt which is therefore considered as actually paid and extinguished But. in truth, it is not always a legacy, nor a release or extinguish ment of the debt. It -is not a legacy, if it appear from the will that the testator did*not intend to give the amount of the debt to the executor ; as if he give him a distinct legacy in the same will It is not always a release or extinguishment of the debt: for it is assets to pay creditors, if wanted for that purpose. (12) It is also assets to pay legacies, or distributable among the next [ * 267 ] of kin, when the debt is not itself given as a * legacy to the executor. (13) It seems more correct to say that, although the duty remains in some cases, and for some purposes, yet the right of action is always discharged, because the executor cannot sue himself, (a)
This reason, it is obvious, applies with equal force to an administrator ; and, indeed, in all those cases where the debt is not in effect given to the executor as a legacy, it is difficult to imagine any substantial reason for the discharge or extinguishment of the action, which does not apply to the case of an administrator.
In 1 Rol. Abr. 920, pi. 11, it is said that, if the creditor dies intestate, and the ordinary commits administration to the debtor, by which the debt is extinct, yet it shall be assets in his hands; for the ordinary has no power to discharge the debt. This short note would not be considered of much authority, against the opinion of Lord Holt, in the case cited from Salkeld, and against the cases in 8 Co. 268, and 1 Sid. 79; but it is believed that they may all be reconciled by distinguishing between a discharge or suspension of the remedy by action and an extinguishment of the debt. In this view, the expression iri Rolle is incorrect; it should have been, that the action is discharged or suspended ; for the debt clearly is *247 not extinguished or released without payment, the amount of it being assets payable to the creditors of the intestate, or distributable among his next of kin.
On the other hand, those who hold that it is no extinguishment cannot mean to say that any action can be maintained for the debt, so long as the debtor remains administrator. In the case cited from 8 Coke, 268, the administration granted to the debtor had been repealed, and was considered as void ab initia; after which he was held liable in an action by an administrator rightfully appointed. In the case from 1 Siderjxn, 79, which is more fully reported in 1 Keb. 313, it appears that the obligor, who was appointed administrator, had died, and his executor was sued for the debt by an administrator de bonis non of the first intestate. (14)
* I have not been able to find any case where an ad- [ * 268 ] ministrator, while 'his letters of administration remained in force, has been sued for a debt due from him to the intestate. The case cited in the argument, from Dyer, 305, seems to be somewhat analogous. There an administrator appointed in Ireland released a bond debt due to the intestate from a person in Ireland; but the bond being in England at the death of the intestate, an administrator appointed in England maintained an action there on the same bond against the obligor, because the administrator appointed in Ireland had no control of this debt, and no authority to release it. And there can be no doubt that, if the Irish administrator had been himself the obligor, and had undertaken to appropriate the amount of this debt as assets there, he would still have been liable to the action of the English administrator. But this seems to prove, e conversa, that, if the Irish administrator could have lawfully released the debt when due from another, he might have discharged it, and accounted for it in Ireland, if due from himself. In the case at bar, there can be no doubt that the administrators in Connecticut might have received and released this debt, if due from any other person in that state.
It was suggested, in the argument, that the notes on which this action is brought were in this state at the death of the intestate. This fact does not appear on the record; and, if material, it should have been pleaded. But if the notes were here, the debtor, being a citizen of Connecticut, might be effectually discharged by a release from any administrator in Connecticut, having lawful authority to receive the debt. And, further, the notes, under such circumstances, could never be recovered, in the ordinary course of things, *248 without being sent to Connecticut, and demanded by an administrator duly appointed there.
The circumstance of the defendant’s having come into this state, so as to expose himself to this action, cannot affect the general principle. The law would be the same if that contingency had not happened; in which case the debtor [ * 269 ] * could never be compelled to pay but to an administrator duly authorized in Connecticut; and, of course, a release given to him by such an administrator would bar any subsequent action for the same debt.
Another reason why this money should be accounted for in Connecticut is, that all the effects of the deceased are liable, in the first instance, to his creditors there. No principle of comity requires of that government to lend their aid in collecting the effects of the deceased, and to send those effects out of their country, whilst any of their citizens have just and legal claims upon the fund. This debt, then, was assets, liable to the claims of all creditors, citizens of Connecticut; and they ought not to be deprived of this advantage merely because the debtor is himself appointed administrator.
If the opinions now expressed tended in any degree to impair the security of the creditors or next of kin of the intestate, it would afford a strong argument against their correctness. But no such effect is to be apprehended. As soon as the debtor is appointed administrator, if he acknowledges the debt, he has actually received so much money, and is answerable for it. This is the result with respect to an executor; (15) and the same reason applies to an administrator ; as the same hand is to receive and pay, and there is no ceremony to be performed in paying the debt, and no mode of doing it, but by considering the money to be now in the hands of the party, in his character of administrator.
Lord Holt, in the case so often cited from Salkeld, gives it as his opinion that, if the administrator in such case, having no assets, pays a debt of the intestate,'to the amount of what he himself owed, this would be a release. And why is it not as effectual a release, if he brings the money into his account to the credit of the intestate’s estate, to' be paid to creditors, if required, or to be distributed among the next of kin upon a decree of the Probate Court? It is said, in Shelley’s case, (16) that all the debts mentioned [ * 270 ] in the * inventory shall be assets in the executor’s hands, unless he prove a demand and refusal. In the case of his own debt, which he admits to be due, it is obvious that he can never prove a demand and refusal. The consequence is, that he *249 and his sureties in the administration bond are liable for the amount of such a debt, in like manner as if he had received it from any other debtor of the deceased.
It may be thought injurious to the sureties of the debtor that they should thus be made liable for a debt due from the administrator. To this it may be answered, that, if such be the legal effect of the bond, it is presumed to have been contemplated by the parties at the time of executing it; and they cannot afterwards complain of the natural and legal consequence of their own voluntary act But how is the condition of the sureties worse than if any other person had owed the same debt, and the administrator had released the debtor without receiving payment, or upon taking a note payable to himself for the amount ?
To examine this point a little further, let us suppose that an administrator, being a debtor to the intestate, after inserting his debt in the inventory, and bringing it into his account to the credit of the intestate’s estate, should settle his account in the Probate Court, and that a decree should there be made for distributing the residue remaining in his hands on such account; if the administrator should become insolvent, or refuse to pay the balance, pursuant to the decree, and an action should be instituted on the part of the next of kin on the administration bond, would the sureties be exonerated, because a part or the whole of that balance arose from a debt originally due from the administrator himself? They are obviously in no worse condition than if the administrator had received the like amount from any other debtor, and, after crediting it in his account, had become unable to pay.
If it should be said that the representatives of a deceased administrator, under such circumstances, would be liable for the amount of his original debt, if not actually paid by him * in a course of administration, as in the case cited from [ * 271 ] 1 Keb. 313, still there seems to be no inconsistency in holding that the sureties are also liable on their bond for the same amount. The chance of such a future remedy ought not to deprive the creditors or next of kin of their resort to the sureties, while the administrator is living, during all which time they have no other remedy.
We are therefore satisfied that, by the principles of the common law, the defendant was, at the time when this action was commenced, bound to account, as administrator, for the debt now demanded ; and that the fact set forth in his plea, if not amounting to an actual payment of this specific debt, are equivalent to a payment, so that, if held liable in this suit, he might, without any default on his part, be twice charged for the same debt.
*250 It has not been suggested that the laws of Connecticut vary, in this respect, from the common law. The plea might perhaps have contained a more distinct reference to the laws of Connecticut, or a more direct averment of the effect of those laws upon the facts disclosed. But as no objection has been made to the plea on this ground, and the cause has been argued on both sides with reference to the common law, as recognized among us, we have not thought it necessary to examine very critically the form of the plea, being satisfied that the defendant has shown substantially a just defence to this action, (a)

Defendant's plea good.

 Goodwin vs. Jones, 3 Mass. Rep. 514. — Dawes vs. Boylston, 9 Mass. Rep. 337 Borden vs. Borden, 5 Mass. Rep. 67. — Langdon & Al. vs. Potter, post, 313.

 Ambler, 25. — 2 Vesey, 35, — 2 B. & P. 229, in notis, Bruce vs. Bruce. — 9 Mass Rep. 337, Dawes, Judge, &c., vs. Boylston.

 Harvey vs. Richards, 1 Mason, 381. — Dawes vs. Head, 3 Pick. 128. — 2 Kent 344. — Decouché vs. Savetier, 3 Johns. Ch. 310. — Dixon vs. Ramsay, 3 Cran. 319. — United States vs. Crosby, 7 Cran. 115. — Bruce vs. Bruce, 2 B. & P. 229.

 1 Mass. Rep. 117.

 9 Mass. Rep. 468.

 Hull vs. Blake, 13 Mass. Rep 153.—Jacobs vs. Hull, 12 Mass. Rep. 25.

 1 Salk. 305.

 Cro. Car. 372—1 Rol. Abr. 920, pl. 13, Holliday vs. Bous.

 3 Rep. in Cha. 49, 89.—3 Bro. Ch. Ca. 110.

 Winship vs Bass & Al. 12 Mass. Rep. 199. — Hays & Al. vs. Jackson & Al 6 Mass. Rep. 149. — Biglow vs. Biglow, 4 Ohio R. 138. — Freakly vs. Fox, 9 B. & Ct 130. — Wankford vs. Wankford, 1 Salk. 299. — Cheetham vs. Ward, 1 B. & P. 630.

 Vide 8 D. & E. 407, Pyne vs. Erle.

 Salk 306

 1 Salk. 296.

 Harvey vs. Richards, 1 Mason, 381. — Dawes vs. Head, 3 Pick. 128. — Decouché vs. Savetier, 3 Johns. 310. — Harrington vs. Brown, 5 Pick. 519. — Piquet, Appt. 5 Pick. 65.