Parker C. J.
We are satisfied, that the facts appearing in these pleadings show no breach of the condition of the bond.
The administration was granted here upon a copy of a will previously proved in a foreign country, in which an executor was appointed, who became duly qualified to act as such in the country where the will was proved. The testator had his domicile there at the time of his death, and the effects collected here are wanted there to enable the executor to pay the creditors of the deceased, his estate being in fact insolvent. The administration here is therefore purely ancillary, and the admin *142 istrator here is only the deputy or agent of the executor abroad;[1] so tiiat whatever effects he may have collected here are to be sent to the foreign executor, unless by virtue of our laws he is compellable to appropriate those effects to the payment of debts which may be due to citizens of this commonwealth or of the United States. This is an important question, which it is not necessary to decide in this action, because, admitting such to be the duty of the administrator, the creditors, at whose instance this action is instituted, have not brought themselves within the principles which alone can sustain a suit upon the probate bond. In order to sustain the action for the benefit of a creditor, if the estate be solvent, the debt must have been ascertained by a judgment of court, after which there must have been a demand of satisfaction upon the administrator. If the estate be insolvent, the debt must have been ascertained by commissioners appointed by the judge of probate, who thereupon shall have made his decree of distribution, on which a demand must likewise have been made upon the administrator by the creditor who would cause the bond to be sued.[1] In relation to the debt of Lenox and Sheafe, no judgment has been recovered, and yet the estate administered upon is treated as solvent, for the judge has decreed payment of the whole sum due. His decree in this respect is a nullity, and the non-performance of it is no breach of the bond. If the estate were solvent, then the administrator would pay on demand without any decree; if he did not, a suit might be brought and the goods and estate of the deceased taken in execution, or a suit might then be brought upon the bond ; for it is only after such a process that the sureties on the bond are responsible. The recovery of a judgment, when the estate is not insolvent, is made by the statute a condition precedent to a suit on the administration bond.[2]
Neither is the non-payment of the debt of Bruce a forfeiture of the bond. The decree of the judge of probate respecting this debt is void, for the reason before stated, tnat it awards payment of the whole debt on the ground that the effects in the hands of the administrator were sufficient to pay all the debts, that is, that the estate was solvent; which, if true, shows that the judge of probate had no authority to make a decree respecting it. But this debt was rejected by the commissioners, a suit has been brought upon it, and judgment recovered, and we will suppose that a demand has been made upon the administrator, though this fact is not stated; nevertheless we think there is no forfeiture of the bond. Bruce, the creditor, is a British subject, and had, at the time when the suit was commenced, and now has, his domicile in London in the kingdom of Great Britain. Though the debt of the deceased to him may have been contracted here, it must be referred to the laws of the country of the debtor for settlement; and it ought not to be m the power of a British subject to disturb the legal course of settlement of an estate, by claiming payment in whole, of the mere ancillary administrator in a foreign country, when by means thereof all the other creditors may be greatly injured. The fact appearing in the pleadings, that the estate of the deceased is insolvent, and that the administration granted here is not original but ancillary, it is the duty of the administrator here to remit all the effects which he may collect, to his principal, unless our own citizens may be creditors and the funds should be retained for their use. Bruce is not in that condition, but is subject entirely to the laws of Great Britain, and should not be allowed to intercept the due course of administration in his own country. For these reasons we think the non-payment of his debt, though ascertained. by a judgment, is no breach of the condition of the administration bond.
Thus this action is determined without touching the questions upon which it was supposed it would turn, which are of a novel and delicate nature, and though often glanced at, do not appear to have been decided either in this or any other State *143 of the Union. We wish to avoid any thing which may be construed into a conclusive adjudication, and yet are of opinion that it will be useful to throw out for consideration the results of our reasonings upon this subject.
If the technical difficulties upon which this cause has been decided had not occurred, but the estate had been rendered insolvent here, and a decree of distribution for a proportion had been issued, or if the debt of Lenox and Sheafe had been ascertained by a judgment, and the pleadings to a suit on the bond had been the same in that case as now, the question would be, whether the funds collected here by an ancillary administration should be appropriated to the payment of such debts as might be regularly proved here, notwithstanding it was made to appear that the whole estate was insufficient to pay all the debts, and that the effects here were wanted by the executor abroad, to enable him duly to administer the estate. It has been contended that this should be done, because the administrator has given bond here in the same manner as if this were the original administration, and because the statute which authorizes this administration, requires that the judge of probate shall settle the estate in the same way and manner as he would if the original will had been proved here. With respect to the bond, it will be saved by a faithful administration of the estate according to law ; and with respect to the settlement by the judge of probate, this must be understood to authorize him to require the administrator to account, and that the due course of proceedings in the probate office shall be observed. It certainly cannot be construed to mean that in all cases a final settlement of the estate shall take place here ; if it did, then if there were no debts here, and none to claim as legatees or next of kin, it would be necessary for all such to prove their right and receive their distributive shares here, notwithstanding the settlement must in such case be made according to the laws of the country where the deceased had his domicile. But we think in such case it would be very clear, that the assets collected here should be remitted to the foreign executor or administrator ; for it seems to be a well settled principle, that
*144 the distribution is to be made according to the laws of the country where the deceased was domiciled ;[1] and if any part is to be retained for distribution here, it will be only by virtue of some exception to this general rule, or because the parties interested seek their remedy here ; in which case it might be within the legal discretion of the court here to cause distribution, or to remit, according to the circumstances and condition of the estate.[2]
An exception to the general rule grows out of the duty of every government and its courts, to protect its own citizens in the enjoyment of their property and the recovery of their debts, so far as this may be done without violating the equal rights of creditors living in a foreign country. In relation to the effects found within our jurisdiction and collected by the aid of our laws, a regard to the rights and interests of our citizens requires that those effects should be made answerable for debts due them, in a just proportion to the whole estate of the deceased and all the claims upon it wherever they may be. In the several cases which have come before this Court, where the legal character and effects of an ancillary administration have been considered, the intimations have been strong, that the administrator here shall be held to pay the debts due to our citizens. The cases Richards v. Dutch, Dawes, Judge &c. v. Boylston, Selectmen of Boston v. Boylston, and Stevens v. Gaylord, are of this character. In all these cases, however, we must suppose the Court had reference to a solvent estate, and in such case there seems to be no question of the correctness of the principle ; for it would be but an idle show of courtesy to order the proceeds of an estate to be sent to a foreign country, the province of Bengal for instance, and oblige our citizens to go or send *145 there for their debts, when no possible prejudice could arise tQ tj)e estate^ or thogg interested in it, by causing them to be paid here ; and possibly the same remark may be applicable to legacies payable to legatees living here, unless the circumstances of the estate should require the funds to be sent abroad. Whether citizens of other States claiming payment of their debts of the administrator here, are to be put upon the same footing with citizens of Massachusetts, by virtue of the privileges and immunities secured to them by the constitution of the United States, is a point which we do not now decide. But without doubt the courts of the United States, having full equity powers, would enforce payment upon the principles above stated, where there is no suggestion of insolvency of the estate. There would be no doubt, we think, that payment of debts by the administrator here, after sufficient proof that they were due and an allowance of his account therefor by the probate court with proper notice, would be faithful administration according to the condition of his bond, and would be a proper way of accounting to the principal administrator abroad.
In regard to effects thus collected within our jurisdiction, belonging to an insolvent estate of a deceased person having his domicile abroad, the question may be more difficult. We cannot think, however, that in any civilized country advantage ought to be taken of the accidental circumstance of property being found within its territory, which may be reduced to possession by the aid of its courts and laws, to sequester the whole for the use of its own subjects or citizens, where it shall be known that all the estate and effects of the deceased are insufficient to pay his just debts. Such a doctrine would be derogatory to the character of any government. Under the English bankrupt system, foreigners as well as subjects may prove their debts and share in the distribution. Without doubt, in other foreign countries where there is a cessio bonorum, or other process relating to bankrupts’ estates, the same just principle is adopted. It was so under our bankrupt law while that was in force, and no reason can be suggested why so honest and just a principle should not be applied in the case of insolvent estates of deceased persons. It is always *146 practised upon in regard to persons dying within our jurisdiction, having had their domicile here ; that is, creditors of all countries have the same right as our own citizens, to file their claims and share in the distribution. There cannot be then a right in any one or more of our citizens, who may happen to be creditors, to seize the whole of the effects which may be found here, or claim an appropriation of them to the payment of their debts, in exclusion of foreign creditors.
It is said this is no more than what may be done by virtue of our attachment law, in regard to the property of a living debtor who is insolvent. But the justness of that law is very questionable, and its application ought not to be extended to cases, by analogy, which do not come within its express provisions.
What then is to be done with the effects collected here belonging to an insolvent estate in a foreign country ? Shall they be sent home in order to be appropriated according to the laws of that country ? This would often work great injustice, and always great inconvenience, to our own citizens, whose debts might not be large enough to bear the expense of proving and collecting them abroad ; and in countries where there is no provision for an equal distribution the pursuit of them might be wholly fruitless. As in Great Britain, our citizens, whose debts would generally be upon simple contract, such as bills of exchange, promissory notes, accounts, &c. would be postponed to creditors by judgment, bond, &c., and even to other debts upon simple contract which might be preferred by the executor or administrator. It would seem too great a stretch of courtesy to require the effects to be sent Home and our citizens to pursue them under such disadvantages. What then shall be done to avoid, on the one hand, the injustice of taking the whole funds for the use of our citizens to the prejudice of foreigners, when the estate is insolvent, and on the other, the equal injustice and greater inconvenience of compelling our own citizens to seek satisfaction of their debts in distant countries ?
The proper course would undoubtedly be, to retain the funds here for a pro rata distribution according to the laws of our State among the citizens thereof, having regard to all the assets, *147 either in the hands of the principal administrator or of the administrator here, and having regard also to the whole of the debts which by the laws of either country are payable out of those assets, disregarding any fanciful preference which may be given to one species of debt over another, considering the funds here as applicable to the payment of the just proportion due to our own citizens ; and if there be any residue, it should be remitted to the principal administrator, to be dealt with according to the laws of his • own country, the subjects of that country, if there be any injustice or inequality in the payment or distribution, being bound to submit to its laws.[1] The only objection which can be made to this mode of adjusting an ancillary administration upon an insolvent estate, is, the difficulty and delay of executing it. The difficulty would not be greater than in settling many other complicated affairs, where many persons have interests of different kinds in the same funds. The powers of a court of chancery are competent to embrace and settle all cases of that nature, even if the powers of our court of probate are not sufficiently extensive ; which however is not certain. The administrator here should he held to show the condition of the estate abroad, the amount of property subject to debts, and the amount of debts, and a distribution could be made upon perfectly fair and equitable principles. The delay would undoubtedly be considerable, but this would not be so great an evil as either sending our citizens abroad, upon a forlorn hope, to seek for the fragments of an insolvent estate, or. paying the whole of their debts out of the property without regard to the claims of foreign creditors. And if the probate court has not sufficient power to make *148 such an equitable adjustment, a bill in equity, in which the administrator here should be the principal respondent, would probably produce the desired result, as then time and oppor♦unity could be given to make known the whole condition of the estate, and all persons interested might be heard before any final decree ; in the mean time the administrator could be restrained from remitting the funds until sucu decree should be passed.

Rejoinder adjudged good.

 Harvey v. Richards, 1 Mason, 381; Stevens v. Gaylord, 11 Mass. R. 256; Case of Miller's estate, 3 Rawle, 312; Potter v. Titcomb, 7 Greenl. 316; Campbell v. Sheldon, 13 Pick. 8.

 Revised Stat. c. 70, § 4.

 Revised Stat. c. 70, § 3. See Newcomb v. Wing, post, 170, note 1; Ring v. Burton, 5 Greenl. 45 ; Potter v. Titcomb, 7 Greenl. 302; Judge of Probate v. Briggs, 5 N. Hamp. R. 66; Coffin v. Jones, 5 Pick. 61; Dawes v. Swett, 14 Mass. R. 105; Prescott v. Parker, 14 Mass. R. 429.

 Pipon v. Pipon, Ambler, 25; Bruce v. Bruce, 2 Bos. & Pul. 229, note; Olivier v. Townes, 14 Martin, 99; Shultz v. Pulver, 3 Paige, 182; De Sobry v. De Laistre, 2 Harr. & Johns. 193, 224, 228; Holmes v. Remsen, 4 Johns. Ch. R. 460; S. C. 20 Johns. R. 229; Vattel, bk. 2, § 85, 103, 110, 111; Harvey v. Richards, 1 Mason, 418; Story on Conflict of Laws, 403 et seq.; Jennison v. Hapgood, 10 Pick. 100; Decouche v. Savetier, 3 Johns. Ch. R. 190; Guier v. O’Daniel, 1 Binn. 349; Williamson v. Smart, Taylor, 219; Cameron & Norw. 146.

 See Jennison v. Hapgood, 10 Pick 100; 1 Story on Equity, 552.

 Davis v. Estey, 8 Pick. 475; Harvey v. Richards, 1 Mason, 381; Jennison v. Hapgood, 10 Pick. 77; Case of Miller's estate, 3 Rawle, 312; Hooker v. Olmstead, 6 Pick. 481; Richards v. Dutch, 8 Mass. R. 506; Harrison v. Sterry, 5 Cranch, 299; Milne v. Moreton, 6 Binn. 353, 361; Olivier v. Townes 14 Martin, 93, 99; De Sobry v. De Laistre, 5 Harr. & Johns. 193, 224; Holmes v. Remsen, 20 Johns. R. 265; Decouche v. Savetier, 3 Johns. Ch. R. 190 ; Wms. on Executors, 208; Story on Conflict of Laws, 423; 2 Kent's Comm. (2d edit) 433, 434.
In this State, by the Revised Statutes it is enacted, that the estate of a deceased person, insolvent, shall, as far as practicable, be so disposed of¡ that all his creditors, here and elsewhere, may receive each an equal share, in proportion to their respective debts. Revised Stat. c. 70, § 23