Mr. Chief Justice Shahkey
delivered the opinion of the court.
The merits of the defendant’s plea in this case, present the only subject for investigation. The demurrer admits the plea, ■and if the facts stated are a good bar to the action, the circuit court decided correctly in overruling it. The plea states that the defendant’s intestate, Prestwood Smith, in his lifetime and at the *80 time of his death was administrator of the goods and chattels of Thomas Kelsey, deceased, and that the notes on which the suit is brought, came to the hands of Prestwood Smith, as administrator, as part of the effects of Kelsey, and so remained until Smith’s death. That they then came into the possession of the defendant, as administrator to Prestwood Smith, where they still remain, and that no complete settlement of the administration of said Smith, on the estate of Kelsey, has ever been made. It is contended that the facts set forth, show that the notes were assets in the hands of the first administrator by operation of law, and that, therefore, the administrator de bonis non, has no right to recover, the. amount being considered as so much money actually received by the first administrator.
It is certainly true, that the administrator de bonis non has no right to recover for any thing which has- been duly administered; his right of recovery extends merely to such articles as may remain unadministered. If, therefore, these debts, by the mere possession of the notes, were converted by law into assets or money, in the hands of the administrator, the present plaintiff had no right to recover.
This question seems to me to be relieved from, the embarrassment growing out of the application of the principles of the common law, by the intervention of our statute. The 88th section in Revised Code, 53, provided that it shall be the duty of an executor to give in claims against himself in the list of debts which he is bound to render, and in case he fail to do so, any person interested may compel him, by petition to the orphans’ court, and the court by consent of parties may decide on the same, or it may be referred, or determined by an issue to he tried in the circuit court, and a certificate from such court shall be admitted to destroy or establish the claim, “ and if the executor shall give in such claim, or the same, or any part be established, as aforesaid, he shall account for the sum due in the same manner as if it were so much money in his hands, and on failure, his bond may be put in suit.” It may be remarked on the latter part of this section, that, after the fact is established by one of the modes required, if the executor fail to account for the debt as so much money, his bond may be put in suit, in consequence of *81 such failure to account; no right of action is given by this section for a failure to give in the claim, unless it arises from a breach of duty required.
One of two things is required to be done, before the debt can be considered as so much money in the hands of the executor, first, that he should give in the claim against himself in the list of debts due the deceased; or, secondly, in case he fail to do that, it must be found against him by the orphans’ court, by referees, or by an issue in the circuit court, neither of which appears to have been done. The 89th section extends the foregoing provisions to administrators. If Prestwood Smith had given in these claims in his inventory of debts, then he would have fulfilled the letter of the law, and by that very act the debt would have been as money on his hands, or if a petition had been filed and a proper finding had taken place against him, then it would have been as so much money.
By the provisions of this statute, Prestwood Smith, at any time during his administration, had a right to controvert these claims and show that the notes were without consideration, and not binding. Let us change the case and suppose that this suit had been instituted, as the defendant says it should have been, by a creditor or legatee, and, according to the doctrine contended for, the bare possession of the notes by Prestwood Smith, would make him liable; because by operation of law, they become as so much money, notwithstanding they may have been given without consideration, or the consideration had failed,
I do not think that a debtor should be placed in a worse situation, by becoming administrator to his creditor. The statute does not make the administrator accountable, until the justice of the claim shall have been established, either by his own confession entered in the inventory, which is to become a part of the records, or by a proper and legal determination against him by a jury, if he chose, for this must be what the statute means in making provision for the determination of the court, or for a reference, or an issue. It cannot mean that the fact of whether such claim has come to the hands of the administrator shall be so determined. These notes, then, certainly did not become as so much money, by the provisions of this statute, nor do I think in *82 strictness they became so in common law. The statute is an enlarging or cumulative statute, in some of its provisions, and I think, independently of it, under the particular circumstances in this case, we could not consider the notes in question as money. >
By the common law, it seems to have been settled that the appointment of a debtor executor, was an extinguishment of the debt, unless there were creditors or legatees unsatisfied, without the application of it for their benefit; in the case of administration it has never been held that it was an extinguishment of the debt, but only a suspension of the action, for a very obvious reason, that the administrator could not sue himself. It is also said to be an universal rule that when the remedy is suspended by the act of the party entitled to it, it is gone forever. 2 Co wen, 807. And, although the remedy is evidently suspended in the case of an administrator, yet it is not by the party entitled to it, but by the appointment' of the ordinary, the manifest reason of the suspension being that there is no one to enforce it, or rather that the person legally entitled to enforce it, is the one against whom it is to be enforced. This being the reason, it seems to me, that the rule can only apply while the reason prevails, unless in the meantime something has been done to change the nature of the liability.
The principles which prevail in the decision of this question will all be found, as well as many authorities referred to in the case of Stevens’s administrators against Gaylord, 11 Mass. Rep. 256. It is said in that case, “as soon as the debtor is appointed administrator, if he acknowledge the debt, he has actually received so much money and is answerable for it.” This shows that there must be an acknowledgment on the part of the administrator, and this acknowledgment I take to be material in order to change the demand. The case in Salkeld, 306, is in support of this position. The case of Stevens v. Gaylord, was instituted in Massachusetts, by the administrator of Tibbals, against Gaylord, who was administrator of Tibbals, in Connecticut, founded on a note. Gaylord’s plea was very similar to this, except that it went farther in stating that he had inventoried the debt, sought to be recovered in Connecticut, and was then liable for it. This *83 was considered a material matter, inasmuch as it created a liability in Connecticut, and was in the. due course of administration. Judge Jackson, in relation to that part of the plea, says, “ It is material here to recollect;, that the debt now demanded is included and specified in the inventory exhibited by the administrators in Connecticut, as part of the goods and estate of the intestate, for which the administrators were accountable to the judge of probate there. In this particular, and in this mainly, I think the analogy between the present case and Stevens v. Gaylord fails. If Smith had returned these notes in his inventory, there could have been no doubt, or if he had even acknowledged them, it would have given plausibility to the defence. In continuation of his remarks, the judge says, “the case might have been very different if the defendant had denied that he owed the debt, and had refused to insert it in the inventory, and to account for it as the property of the deceased.”
It is true that we have no evidence of Smith’s refusal to insert these claims, or to account for them, except a neglect to do so in violation of the injunction of the law, which certainly approaches nearer to a refusal or denial than to an admission, and indeed I think may, with great propriety, be considered equivalent to a refusal, inasmuch as he was the only person to whom the denial or admission of the debt could be made. It would, therefore, be absurd to say that he did deny the justice to himself, or that he so admitted it. The law has pointed out what shall amount to an admission to charge him; his neglect, if it has any effect, must operate as a denial, and would properly bring the case within the distinction laid down in the authority. If Smith had disbursed funds to the full amount of all moneys recorded enclosing these debts, that might change the aspect of this case, but no such thing is stated in the plea. In the case so often referred to, the court seems to have founded the opinion mainly on the ground that the defendant had rendered himself liable in Connecticut, and inasmuch as that liability was binding upon him, he could not be charged in Massachusetts. This liability arose by the act of returning the claims in the inventory, and was not a liability incidentally arising out of undue administration. If there be any *84 liability in this case, it must be in- consequence of mal-administration, and not on the particular claims in question.
The decision of the court, in Winship v. Bass et al., 12 Mass. Rep. 199, seems also to be clear on this subject. Chief Justice Parker says, that “ there is no pretence that a debtor, by taking out letters of administration upon his deceased creditor’s estate, can discharge himself of his debt. The remedy at law against him may be suspended during his administration, but it will revive after that ceases.” If this position be correct the defendant must be liable on these claims, the administration of his intestate having ceased, and the rule as laid down is peculiarly applicable to the facts of this case. If it was only a suspension and can revive, it must follow that the revival can only take place on the original claim. To make the administrator liable on his bond, would not be a revival of the claim, but would arise in consequence of a total change in the character of the demand. A revival can mean nothing more than giving energy and efficacy to that which was dormant; and if it be materially changed by the act which produced the suspension of its being, it is not a revival. If, by the act of administration, the debts due by the administrator to the intestate were actually changed into money, and the right of action on the promissory notes merged into a remedy on the bond for mal-administration, no revival of such debt could take place, and we must, therefore, suppose that the learned judge had used language unmeaning as well as untechnical; but I think his remark, will be found to contain the true principle.
A material difference is made in the authorities, between an extinguishment and a suspension, according to the common law doctrine on this subject, and this 'will be found to be the only difference between an executor and an administrator, a suspension being considered a temporary privation of the remedy, while an extinguishment is a total destruction of it. One arises by act of the party, and the other by operation of law; from the necessity of the case. Toller, in his Law of Executors, 348, makes this distinction, and refers to the case of Lockier v. Smith, 1 Siderfin, 79, in support of it, which is directly in point. It is this: “If the obligor *85 of a bond, administer to the obligee and die, a creditor of the obligee, having obtained administration de bonis non, may maintain an action for such debt against the executor of the obligor.” I have not been able to get the book referred to, but the principle decided is extracted in numerous cases, and acknowledged to be law. If so, it is decisive on this question. Toller acknowledges it as law, and from it draws the distinction above mentioned.
That administration de bonis non was obtained by a creditor of the obligee can make no difference, since it was not by virtue of that credit that he was enabled to sustain the action, but in his character of an administrator de bonis non.
The averment in the plea, that a final settlement of the administration account of Prestwood Smith on the estate of Kelsey had not been made, cannot vary this case. The defendant, as administrator of Smith, has no right to extend any such account beyond the actual administration of Prestwood Smith, by adding to it items which were not administered by Smith in his lifetime; and even if he had, he has not done so by placing these claims on such account or inventory, and therefore cannot claim any benefit by it. The administration must stand, so far as the liability of Smith is concerned, as it was at his death; and whatever was not administered must vest in the plaintiff as administrator de bonis non. Nor does it make any difference in whose possession the notes may be.
In regard to some of the points made by defendant’s counsel, I think they may be easily answered. That the plea states that the notes are in defendant’s possession in autre droit, and that if it be wrongfully Avithheld it creates personal responsibility. If the action were for the notes, the law referred to might apply; but it is for the amount, for the payment of which the administrator is liable in that capacity. Again, that the plaintiff cannot sustain the action, because as administrator de bonis non he can only control what was left unadministered; and the demurrer admits that the notes are in possession of defendant. The notes are but the evidences of the debt. The debt itself, being unadministered, vests in the plaintiff, and it is immaterial in whose hands the notes may happen to be; it does not affect the debt. It is also urged that when Prestwood Smith failed to make inventory of these *86 debts, he became liable on his bond. That may be true, and yet he may be liable on the notes. I think I have shown that the debt was not extinguished by any act of his. Suppose he bad failed to make an inventory of other debts as the law directs, would such failure have worked an extinguishment of such debts? Could not the administrator de bonis non recover against a third person on a note left uncollected by Prestwood Smith? If not, there can never be any need of an administrator de bonis non; for, according to this position, if he fail to make an inventory, the very act makes him liable on his bond to the extent of the failure, whether of personal property or debts, for the duties required are the same in relation to both. On the other hand, if he do make an inventory, it is an administration, and the administrator de bonis non can have nothing to do with it. I shall not pretend to controvert the liability on the bond arising from failure of duty, but I do not think that any such failure must necessarily operate as an extinguishment of debts by converting into money in the hands of the administrator.
I think the facts stated in the plea do not form a good bar to the action, and that the demurrer to the plea should have been sustained.
The judgment must be reversed; and, as the judgment below should have been respondeos ouster, so it must be here.
Note. — Smith, J., being interested, did not sit in the case.