Shaw, C. J.
Two other cases, arising on the settlement of the same estate, have formerly been before the court, upon points of probate jurisdiction, in the county of Worcester, where the deceased intestate had his domicil. Sigourney v. Sibley, 21 Pick. 101 : 22 Pick. 507. Administration was then taken out in Middlesex, as the next most ancient county, to which jurisdiction is given by Rev. Sts. c. 83, § 15.
It is now well settled, whatever may have formerly been the role of law, that a testator, by making his debtor executor, does not give him the debt, by way of legacy, nor release or discharge *558 it. In this respect, he now stands on the same footing with an administrator. But as an executor or administrator cannot demand or receive payment of himself, and cannot sue himself, and yet is bound to account for his own debt, that debt must be considered as assets. Where the same hand is to pay and rece’.ve money, the law presumes, as against the debtor himse.lf, that he has done that which he was legally bound to do, and charges him with the amount as a debt paid. Whether the crediting of his own debt in his probate accounts, and even a decree of distribution upon them, where there has been no actual distribution under such decree, would be so far regarded as actual payment, as to exonerate a surety, or discharge any other collateral liability, is a distinct question, the decision of which is not necessary in the present case. It is sufficient for the present case, that the administrator is bound to account for his own debt, as a debt paid, and as assets, without other act or cere mony. Stevens v. Gaylord, 11 Mass. 256. Winship v. Bass, 12 Mass. 199. [5 Met. 313.]
The administrator’s own debt being assets, it becomes an item in his administration account, and the question whether such debt is due, and the amount of it, becomes a question of probate jurisdiction in the first instance, to be decided by the judge of probate, on all questions as well of fact as of law, subject to an appeal to this court. In rendering his account, an executor or administrator is not only bound to account on oath, like all other accountants standing in a fiduciary relation, but it is provided by statute, that he may be examined on oath, by the judge of probate, upon any matters relating to his accounts. Rev Sts. c. 67, <§> 7. This obligation therefore of an administrator, to answer on oath all pertinent interrogatories propounded to him touching his accounts, seems to be established not only by the general rule of law, applicable to accountants, but also to be within the express provision of the statute. Such, we think, has been the established practice, as well under the preceding laws, as under the revised statutes. Selectmen of Boston v. Boylston, 4 Mass. 318. Stearns v. Brown, 1 Pick. 535. Pope v. Jackson, 11 Pick. 113. Bailey v. Blanchard, 12 Pick. 166. Higbee v Bacon, 7 Pick. 14; 8 Pick. 484; 11 Pick. 423
*559 The court are therefore of opinion, that the administrator was bound to answer on oath, in regard to any and all facts, tending to show that he was indebted to his intestate. One ground of defence to the notes was, that all claim upon them was barred by the statute of limitations; and some of the interrogatories called upon the administrator to admit facts, which would take them out of the operation of the statute; such as the fact of payment and indorsement of interest within six years, by him or with his consent, a new promise, or an unqualified acknowledgment of the debt. These are facts directly pertinent to the question, whether he was indebted to his intestate, or not, and of course are in issue on his account. It was asked, in the argument, whether a bill in equity for a discovery would lie, to compel a debtor to disclose facts, that would avoid the statute of limitations, which would otherwise be a good bar. We cannot see why it would not. Suppose the debtor had made a payment of interest on the debt, and taken the creditor’s receipt. Even if the creditor had regularly indorsed the receipt of interest, at its date, such indorsement alone would not amount to proof of payment, as against the debtor, to avoid the statute. Rev. Sts. c. 120, $ 17. Might not the creditor have a bill of discovery against the debtor, and require him, on his oath, to produce the receipt, and answer to the fact, whether such payment was made, and at what time? We are inclined to the opinion that he might. But whether a common debtor be so bound to disclose, or not, an administrator is bound to a higher and more responsible duty in this respect. He has voluntarily taken upon himself a fiduciary relation, in which he is bound by a conscientious, as well as legal obligation, to disclose fully all the facts within his knowledge, relative to the interests confided to his charge.
As the case must be remitted to the probate court witn an order requiring the administrator to answer the interrogatories, and as the facts to be disclosed may affect the several other questions, somewhat discussed in the argument, we have nol thought it necessary to consider them now.
*560 The auditor’s report was recommitted to him, after the foregoing decision of the court, and he afterwards made another report, in which he set forth the following answers of William Sigourney to the interrogatories that had been formerly propounded to him:
“ The guaranties of the notes of B. F. Town, and of Lee & Lyon, were made by me and subscribed by me. That upon Town’s note was made, according to my recollection, about the year 1828; certainly not later than March 1829. The guaranties on the Lee & Lyon notes were made April 7th 1830, I have no doubt. The consideration of these guaranties I am unable to state ; but I passed them to my father, in the way of business, at some one or two times, in the way of trade. I was frequently dealing with him, and am not able to recall the cir cumstances under which I passed said notes to him, or made the guaranty thereof.
“ In regard to the indorsements of interest, made on said notes, it is my belief that the payment, purporting to have been made upon Town’s note, under date of March' 24th 1830, must have been made by the maker of the note, as I have no recollection of having made any such payment or indorsement. The indorsements on Lee & Lyon’s notes, under date of March 23d 1831 and 1832, were made by the intestate, as I judge from the hand writing; and if any payments were then made, it must have been of payments made by some other person than myself; for I have no recollection or belief that I made the payments, or knew of the indorsements, till long after they purport to have been made.
“ My father called on me, I believe in July 1837, to pay the interest on the notes of Town, and Lee & Lyon. He made no other claim on me, and only required the interest to be paid. I considered myself fully discharged from any liability on account of said notes, because, by my father’s unreasonable negligence and neglect in collecting the same, or giving me notice as guarantor, I believed myself thereby legally discharged from any claim upon me as guarantor; and one other reason was, because my father had told me repeatedly that Lee & Lyon had secured the payment of their notes to him.
*561 When my father called on me to pay said interest, I objected to doing so, for the reasons aforesaid, and stated to him that I considered myself discharged, and ought not to be held to pay any part of said notes, and entirely refused to make such payment. But my father then threatened me that if I did not make such payment, he would sue me for all I was owing him; which amounted to about $6000, exclusive of the three notes above mentioned. I had sustained heavy losses by fire, and was embarrassed in my pecuniary affairs ; and if he had then sued me, as he threatened, it would have brought, as I believe, irretrievable ruin upon my affairs ; and after two or three interviews, in each of which I protested against paying said interest, in order to avoid the suit threatened by my father, I gave him a note or notes for the amount of interest in arrear on the three notes aforesaid, up to the time of the date of the last indorsements on said three notes, cast at compound interest, and he then made the several indorsements above specified, on the said three notes. This is the only payment or assent that I made in regard to said indorsements.”
In answer to an interrogatory, whether he had purchased the equity of redeeming the mortgage given by Otis H. Lee to Andrew Sigourney, the intestate, the said William answered: “ Otis H. Lee was of the firm of Lee & Lyon ; the firm were indebted to me about $ 2000 ; and said Lee was indebted to me about $500, exclusive of the two notes holden by my father I owned one undivided half part of the real estate referred to, and the same was in possession of Lee on about February 10th 1834. Lee brought to me, and delivered to me, a quitclaim deed of the premises. Since about 1835, I have rented said premises, from year to year, and generally received the rents. I have also laid out considerable sums in repairs of the premises, during that time. William Sigourney.”
The questions, that arose from these answers, were argued at Boston, January 14th 1843, by Washburn, for the appellants, and by Barton, for the appellees.
The opinion of the court was delivered at Worcester, October term 1843.
*562 Dewet, J.
The administrator, William Sigourney, having, in pursuance of the order of the court at a former hearing of this case, made further answers to the interrogatories propounded to him in relation to his being indebted to the estate of Andrew Sigourney, the question now arises as to the effect of those answers, and how far, upon all the facts in the case, said administrator is to be charged upon his guaranty of the several notes of Benj. F. Town, and Lee & Lyon. The administrator contends that his original promise, written upon these notes, being in the nature of a guaranty, his promise was only a conditional one, depending upon a proper demand being made upon him, or due notice given him, in a reasonable time, of the non-payment of the notes by the makers, and was therefore to be discharged by the laches of the holder in neglecting to give seasonable notice, if the guarantor has sustained any prejudice by reason of such laches. To this point is cited the case of Talbot v. Gay, 18 Pick. 534, in which the general principle is clearly recognized and adopted, that a neglect to give notice to the guarantor, and evidence of change of circumstances in the maker of the note, injurious to the guarantor, will discharge the guaranty. Oxford Bank v. Haynes, 8 Pick. 423. Tf the claim for charging the administrator with the amount of these notes rested solely on the original promise of guaranty, it would seem quite obvious that the note of Town, and the note of Lee & Lyon, payable in 1831, have remained so long overdue, that without notice to the guarantor that he was relied upon for payment, the other facts found in the case, as to the subsequent failure of the makers, would establish a good defence for the administrator. The second note of Lee & Lyon, payable in 1833, would probably also be discharged, upon the principles adopted in the cases cited. But we have not thought it necessary particularly to consider the question as to the lapse of time after this note became due, and before the failure of the makers; inasmuch as we deem the answer, which is given by the appellees to the whole ground of defence, to be valid, and sufficient to charge the administrator with the amount due upon these notes
*563 A guarantor may waive his right to a defence resting upon the laches of the other party in not seasonably enforcing his de mand. Thus in the case of an ordinary indorser, who has had no legal notice; if with full knowledge of such discharge, by reason of such want of notice, he makes a new promise to pay the note, he may be charged. So the liability of a guarantor may still attach to an instrument, in respect to which he might have been discharged if he had not waived his right to a discharge. A new promise or unequivocal act of recognition of his continued liability, made with full knowledge of the laches of the holder of the note guarantied, will continue the liability of the guarantor.
Upon looking at the facts in the present case, which bear upon the point of waiver, we find that the administrator, after the happening of the alleged laches, and the failure of the makers of the notes, and with full knowledge of these facts, and of their legal effect, (as it seems from his answers,) paid the interest that had accrued on these notes from 1833 to 1837. It is true he paid the same by giving his promissory note therefor ; but a negotiable note given by a debtor for part of a debt, is payment of such part of the debt. Ilsley v. Jewett, 2 Met. 168. The giving of a negotiable note is, in Massachusetts, prima facie evidence of payment of the demand for which it was given. It is no answer therefore, on the part of the administrator, to say that he paid no money on these notes. He did that which was equivalent, and to which the same effect must be given as if there had been the actual payment of money.
Nor do we perceive any defence to be well maintained upon the ground that the payment was made under such threats or compulsion, as would avoid its effect. Supposing the answer of the administrator to be competent evidence to establish the facts stated by him, (which seems very doubtful, and to be excluded ay the rule in Higbee v. Bacon, 8 Pick. 484,) yet here was no such duress as would avoid a contract, or exonerate the party from the obligations he had assumed. The guarantor, in view of all the facts, chose to waive his defence arising from laches of the holder, and to act upon the assumption of a continuing *564 liability resting upon him, and to make payment of all arrearages of interest to the year preceding the death of the holder of the notes. This, we think, was a waiver of the laches of the holder, and was a legal recognition of his own liability as guarantor.
Another ground, relied upon in the argument of the case, was the statute of limitations, which, independently of the effect of any new promise, would have been a good bar to the first two notes, payment of which is demanded of the administrator. But the same facts, which are relied upon to show a waiver of defence arising from want of diligence in the holder in collecting the demand, and giving proper notice to the guarantor, are also quite sufficient to take the case out of the operation of the statute of limitations. It is true that by St. 1834, c. 182, § 1, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract whereby to take any case out of the operation of the act for the limitation of personal actions; but with the further provision, that nothing in said act shall alter, take away or lessen, the effect of any payment of principal or interest. And the same provision, substantially, so far as is applicable to this case, is found in Rev. Sts. c. 120, $$ 13-17. Here the payment of interest was made, by the party sought to be charged, to the year 1837. This payment was sufficient to take the case out of the operation of the statute of limitations, so that this objection no longer remains, and is, therefore, equally unavailing as the other point already considered.
The result will be, therefore, that the administrator be charged with the amount of these notes, unless a deduction, to some extent, is to be made, because the holder of the notes took a mortgage of certain real estate in Connecticut, as collateral security for the notes of Lee & Lyon. Taking collateral security from the debtor without giving time, would not affect the remedy against the surety. Chit. Con. (4th Amer. ed.) 532. Norton v. Eastman, 4 Greenl. 521. As to any allowance by reason of the rents and profits, it does not appear that the mortgagee ever received any. On the contrary, the surety himself, having a conveyance of the right in equity, entered. *565 and has held the possession of the mortgaged premises since 1835. We perceive no ground for any deduction from the notes, by reason of the taking of this mortgage. The administrator must therefore be charged with the entire amount due on the notes guarantied by him.