Sewall, J.
The general question to be determined upon these pleadings is, whether the judgment recovered by the defendant, as administrator of Thomas Boylston, against the executor of the last will of Moses Gill, Esq., deceased, so far as payment and satisfaction have been obtained, is to be inventoried and accounted for by the defendant, according to the condition of his bond of administration, given to the judge of probate for the county of Suffolk, when the defendant’s letters of administration were'granted. If, on this question, the decision should be against the defendant, there arises another question, of the authority of this Court in this particular case; of the * liability of the defendant, in this *308 jurisdiction, in an action prosecuted at the instigation of the residu ary legatees named in the last will of Thomas Boylston.
Against the accountability, which seems to result from the nominal description of the property in question, the defendant alleges a title in himself to the demands for which that judgment was recovered ; an assigment thereof for a valuable consideration paid by himself. Upon this assignment he relies, as vesting in him an exclusive right, an authority to retain to his own use, and without account, all the effects of that judgment, recovered in name only by the administrator of Thomas Boylston, deceased.
The title of the defendant, of which the burden of proof certainly rests upon him, is thus derived, according to the facts disclosed in the pleadings, and not traversed or contested, so far as they are material to the defence, or the maintenance, of this action. The immediate assignment to the defendant is by an indenture of two parts, dated the 24th of August, 1799, from George Lee and others. They acted therein, and claimed to act, as assignees, under a commission of bankruptcy, which had been issued against Thomas Boylston and Messrs. Lane f Frazier, and by virtue of a special assignment from Thomas Boylston in his lifetime. That assignment, by an indenture dated the 1st of March, 1794, was made, as it appears, for the purpose of carrying into effect certain proposals on his part, assented to by the assignees and certain creditors, under the commission of bankruptcy, parties to the instrument. By this indenture, Thomas Boylston, among other things, assigns and conveys to Lee and others all the real and personal estate which he had before placed in the hands of Moses Gill and others, by certain voluntary conveyances without consideration, and which are thereby revoked, and all other his personal estate, moneys, and securities for money, goods, and chattels, whatsoever, (with certain exceptions not important in this inquiry,) upon trusts afterwards * mentioned. The writings, by which these several assignments are understood to have been effected, are in the case by the proferí of them, and by the oyer granted in the pleadings; and the construction and effect of these instruments, so far as the defendant’s claim and title are concerned, is the important. inquiry, upon the result of which the decision in this action depends.
By the indenture, to which Thomas Boylston was a party, his separate debts, an annuity for four years, and a gratuity of 5000/. to him personally, are to be paid out of the estate and effects to be recovered from Moses Gill and others, and out of his other separate estate and effects; subject to which, the whole are made and declared to be, with the estates and effects of Lane & Frazier, a *309 security to all the joint creditors of Lane, Frazier, and Boylston, for a composition of fifteen shillings in the pound, of the debts proved, &c., under the commission, payable in certain instalments, which were to be completed on or before the last day of March, 1793, and to be accepted in full by the creditors of the partnership. And the assignees and creditors covenant that, when all the trusts in favor of the creditors shall be fully performed, tin y will consent to a supersedeas of the commission, and that it shall be lawful for the assignees to reconvey all the said estate and effects then in their hands, to the said Lane, Frazier, and Boylston, according to their respective rights and interests therein.
There is a reliance also for the plaintiff on the implied trust to the same purpose, which is said to be understood in every assignment under a commission of bankruptcy ; viz., that, when the effects assigned are found to exceed the amount of the debts proved under the commission, the surplus of the bankrupt’s effects are to be reconveyed to him, whether the commission is or is not superseded.
These trusts, by which a remaining interest and equity continued in Thomas Boylston, in the effects he had assigned, have rendered material the averments in the surrejoinder * for the plaintiff, and those for the defendant in his rebutter.
Of these allegations, the most important, in considering the general question of the defendant’s title, are the circumstances, which are to be taken as confessed, — that the defendant, when he contracted with the assignees of Thomas Boylston for an assignment of the demands vested in them against Moses Gill, was administrator with the will annexed of Thomas Boylston, by letters of administration obtained from the Prerogative Court of the archbishop of Canterbury, in which the same will had been proved on the 5th of April, 1799; that the defendant then had in his hands, of the effects of the testator, a large sum of money, much exceeding the sum required for the contract and purchase; that, with the sum paid by the defendant, the assignees held of the effects assigned more than sufficient to pay all the debts of Thomas Boylston, and the composition upon- the debts of Boylston, Lane, and Frazier; and that all their creditors respectively have been since fully satisfied, so far as the assignees, or the effects holden by them, were liable.
On the other hand, it must be understood and considered that this sufficiency of the estate and effects assigned was unknown, and had not been actually realized by the assignees, at the time of the assignment by them made to the defendant; and that a large sum of money was then due to the creditors of Thomas Boylston, and of Boylston, Lane, and Frazier, for which the effects in the hands of the assignees were then liable
*310 The circumstance, also, that the purchase was made with the defendant’s own money, and not with the money in his hands, as administrator, deserves attention; as it is averred and admitted by the pleadings that the defendant has paid 750Z. sterling for the assignment to him. But with this is to be considered the amount of the judgment recovered ; being, as averred, upwards of 100,000 dollars, or more than 22,7001 sterling.
* Some objections have been urged, in a general view of this subject, upon the ground that dioses in adion are not assignable, and that the assignees under the commission had no authority to assign or transfer these demands to the defendant.
Choses in action have been for a long time considered as assignable, as to the beneficial interest and property; and numerous decisions to that effect may be cited, in which the principle has been established and enforced, as well in courts of law as in equity. (1) The remedy is still subject to some restriction, not affecting the contract of assignment, but requisite to the security of the party liable by the contract assigned, where the transfer has no aid from any statute provision or particular usage, as in cases of negotiable notes, and bills of exchange, and assignments under the statutes of bankruptcy. (2)
In this last case, however, an assignment by commissioners, if effectual after notice to the debtor of the bankrupt, so far as to vest in the assignees the beneficial interest and property, would not be allowed, with us, the operation, which such an assignment has in England, of giving to the assignees a remedy in their own names upon the debt assigned. (a) Respecting debts, therefore, recoverable in this jurisdiction, an assignment under a commission of bankruptcy is not more effectual than it would be if obtained from the bankrupt, by an instrument to which he should be a party in fact.
The power of the first assignees to reassign seems to be under *311 stood in several provisions of the bankrupt laws, and is, in every ease, the result of an absolute property and right, vested by an assignment from a creditor of all his interest and demand, with powers of attorney and substitution granted to his assignee. The right of the assignee of a chose in action is not defeated by the death of the assignor. But the contract of assignment entitles the assignee to the aid, and authorizes him to use the name, of the executor or administrator. It results, of course, that . * in such a case the executor or administrator is not accountable for the judgment which may happen to be recovered in his name, the beneficial interest and property having belonged to another, and not. to the testator or intestate at the time of his death. (3)
Thus far the title and claim of the defendant, under the assignment from Thomas Boylston to Lee and others, and their assignment to the defendant, seem to be maintained against all the objections which have been urged, either from a supposed want of authority in the assignees to reassign, or their special trust, as acting under a commission of bankruptcy, as well as under a contract with Thomas Boylston, for a composition of the debts of the partnership.
The particular case of a judgment, recovered by an administrator, upon demands and choses in action, which had been assigned to him in the lifetime of the intestate, is indeed unusual. But, allowing that his name is to be used to the same purpose by any other assignee, we know of no rule or principle of law which will avoid the effect of the assignment, because of the concurrence of administrator and assignee in the same person, or prevent a recovery, in that case, to his own use, and without account.
The inquiry is thus narrowed, in our opinion, to the questions which have been argued respecting the operation of the assignment to the defendant,—whether the property and demands thereby assigned were transferred to him, to his own personal use and benefit ; or that the assignment has the effect only of a release and discharge by the assignees of Thomas Boylston from their demands, and is to be considered as a reconveyance to his representative, vesting the property assigned in the defendant as administrator.
The counsel for the defendant rely upon the tenor of the instruments of assignment, their legal construction and effect, and the fact of a consideration paid by the defendant from his own money, adequate, it is said, considering * the uncertain amount and value of the demands assigned, and at *312 least sufficient for the purpose, where the assignors were intrusted with the absolute disposal of the property assigned.
The counsel for the plaintiff, or rather for the legatees of Thomas Boylston, at whose promotion this suit is brought, have rested their principal argument upon the relations of the parties in the assignment immediately to the defendant. It is argued that he is accountable and to be charged for the judgment recovered against the executor of Moses Gill, or for the effects received thereon, because the assignment under which he claims was made to him by trustees accountable at the time to him as administrator; because the interest transferred was a property, for which, upon their trust, they were then liable to the representatives of Thomas Boylston; and because the defendant, who now claims as assignee or purchaser, having, at the time of his purchase, the office of administrator with the will annexed, was himself the trustee of the creditors and legatees of Thomas Boylston, and therefore, at their election, he is to be considered as having redeemed a mortgage or pledge of the testator, which becomes assets for the performance of his last will.
As to the title of the defendant, so far as it depends on the tenor of the two indentures, and the intentions therein expressed of the several parties to those instruments, we have not been able to discover, from a careful examination of them, any recital or stipulation which militates with the claim of the defendant.
Independently, altogether, of the operation of the statutes of bankruptcy, by the deed and assignment of Thomas Boylston to Lee and others, the assignees under the commission, they became entitled to all the personal estate, moneys, and securities for moneys, goods, and chattels, of Thomas Boylston, whatsoever and wheresoever. Our opinion of their authority to reassign we have already “ intimated ; and in the indenture between Lee and others, the assignees * under the commission, and the defendant, in which the indenture, whereto Thomas Boylston was a party, is carefully recited, and in pursuance of an agreement recited to have been made with the defendant by George Erving, one of the assignees, and for divers causes and considerations, and a nominal consideration of ten shillings, the assignees bargained, aliened, released, and assigned, unto the said Ward N. Boylston and his heirs, “ all those messuages and lands in the town of Boston, and other parts of the state of Massachusetts Bay, which, by the recited indenture, Thomas Boylston had covenanted and agreed to convey, '&c., as the assignees should appoint, &c., subject as in that indenture is mentioned. Also, for the same considerations, &c., and in further performance of the agreement aforesaid, the *313 said Lee and others, assignees under the commission of bankruptcy, bargain, sell, assign, transfer, and set over, all and every the debts and debt, rents and arrears of rent, sums and sum of. money, and all other the personal estate and effects whatsoever, late of the said Thomas Boylston, deceased, which, under and by virtue of the said indenture of 1st March, 1794, the said Lee and others now are entitled to demand against or from the said Moses Gill, his executors or administrators, and which now remain due and recoverable, &.c., to have, hold, receive, take, and enjoy, the said debts, rents, sums of money, &c., as assigned to the said Ward N. Boylston, his executors, administrators, and assigns, as his and their own proper goods and chattels forever.” And he is then appointed the attorney of the assignees, to demand, &c., in their names, &c.; and he covenants, on his part, to indemnify them against his acts in their names by virtue of the powers granted.
The words “ subject as in that indenture is mentioned,” connected as they are immediately with the transfer of real estate, must, we think, have reference to the recital of possible charges and encumbrances, to which the messuages and lands in Boston, and other parts of the state, may *be supposed liable. To understand this reference as including the trusts and limitations upon the property of the assignees, would render it inconsistent with the general purpose of the instrument and contract. And upon the whole, if it was competent to the defendant to purchase the property in question to his own use, the indenture of two parts, in which he was a party, is sufficient evidence of the intentions of the assignees to sell, and of the defendant to purchase to his own use; and their contract must avail accordingly.
'When called upon, however, to give to this instrument the effect of a conveyance and transfer, to the exclusive benefit and use of the defendant, the nature and situation of the property intended to be transferred become very important considerations.
The demands assigned, upon which the contest in the case at bar has arisen, were not recoverable at the time of the assignment, but by the intervention of an administrator in this jurisdiction, where the debts were due, and the debtor was then living. Nor, as we conceive, were those demands recoverable here for the benefit of the assignees undei the commission of bankruptcy, to the exclusion of any creditors of Thomas Boylston, if any should be within this jurisdiction. (4) (b) The trusts and purposes for which these *314 demands had been vested in the assignees, were nearly fulfilled. 1 lie last instalment, it is said, had not been paid, although the time had elapsed ; but it must be presumed, upon the facts averred, that their claims upon the property of Thomas Boylston, under his deed to them, and the sufficiency of the effects in their hands to res pond those claims, were at that time capable of being ascertained to a great degree of certainty; and beyond that amount, for the whole residue of the property intrusted with the assignees, they were, in effect, the trustees of Thomas Boylston, and of his representatives after his decease; accountable, in this relation, both by the operation of the bankrupt laws, and by their express stipulations in the indenture * between them and Thomas Boylston, by which his effects, and these demands in particular, are understood to have been assigned. The authority to exact this account, to enforce the execution of the trust, in which the assignees were then, in fact, liable, vested in the defendant upon his administration ; and it had become his duty to exercise this authority for the use and benefit of the creditors and legatees of the deceased testator. Indeed, the rights of Thomas Boylston, resulting from the limitations upon the property of the assignees in the effects assigned to them, and from their covenants to reconvey as soon as all the trusts in favor of the creditors should have been fulfilled, were in the nature of dioses in action, which had vested in the defendant as administrator.
In this distinct responsibility of the defendant under his administration, and of the assignees under their assignment, consisted the legal security of the creditors and legatees of Thomas Boylston, that whatever residue should be found to have remained of his effects would be recovered and accounted for to their use. And if this security has been lost, and with it their just expectations upon the effects of Thomas Boylston in the hands of his assignees, it must be because the defendant, acting by virtue of his office, had authority to relinquish demands and rights vested in him as administrator, without any consideration to those prejudiced thereby, or any accountability on his part.
The assignees protected themselves by obtaining the consent of the creditors under the commission and compromise, and by dealing with the defendant, the other party, to whom the assignees had, as the event proved, become in fact accountable. His acceptance *315 of the assignment, being at the time administrator, operated as a discharge to them ; and if this bargain is to be confirmed, upon the terms which have been urged for the defendant, he gains indeed, but at the expense of those who had rights not subjected to his disposal by any privity of contract. * Whether they were so subjected by the act of law under which, and not by the appointment of the parties concerned in interest, the defendant derives his authority and trust as administrator, remains to be considered.
To decide upon the case thus presented, we have not thought it necessary to examine very extensively the rules of chancery respecting trustees, and the restrictions upon them in the disposal of estates and property, under that form of trusts which are cognizable in courts of chancery exclusively. It is said, and perhaps justly, that a court of chancery is alone competent to enforce the principles asserted in cases of that kind, according to the decisions cited in the argument; that the particular application of them now contended for is recent even in England; and that this Court, as a court of law, has never adopted those rules and restrictions, or exercised any jurisdiction in cases of trust.
It should be recollected, however, that executors and administrators are trustees, and amenable as such in courts of law, as well as in those of chancery jurisdiction.
It has appeared to us that this case may be very satisfactorily decided upon rules and principles familiar in practice, generally known, and as usually enforced and observed in courts of law, as in courts of chancery jurisdiction. I allude to the rules and principles respecting the office and duty of executors and administrators — that part of our system of jurisprudence, derived to us from the land of our ancestors, which, with a few alterations of a practical nature, continues the same in both countries. The personal estate of a testator or intestate vests in his executor or administrator, including his bonds, contracts, promises, and other choses in action, as well as his goods and chattels. These are holden in autre droit, and not as an absolute property, until acquired by an administration and account. If an executor or administrator release a debt, or any contract, by which his testator or intestate was entitled to a sum of money or other advantage, the release * is in his own wrong, and he is chargeable for the amount or value. If he compound debts or mortgages, and buy them in for less than is due upon them, the executor or administrator is not to have the advantage to himself; but it belongs to the creditors or legatees, or party entitled to the surplus. If an *316 executor redeem a pledge of the testator, it shall be assets in his hands to pay debts and legacies. (5)
In short, the general principle asserted iti all ■ those cases seems ■ to be, that executors and administrators are trustees, who are plainly incompetent, without the intervention and approval of the jurisdiction to which they are accountable, to acquire to themselves any part of the property committed to them in trust, or to make any advantage to themselves, personally and exclusively, by any relinquishment, forbearance, or neglect, of the demands, choses in action, or rights in equity, which their testators or intestates had at the time of their death, and which, by legal construction, devolve upon their executors or administrators.
In the decisions cited, and which appear to have been regulated by these principles, it is not particularly stated that the executor or administrator had, or had not, expended his own money in redeeming the pledge, or in compounding the debt or mortgage of his testator or intestate. This circumstance, however, must, we think, be immaterial; it is the particular relation, it is the office and trust of an executor or administrator, which alone are, and ought to be, regarded.
In the case at bar, the defendant is to be considered as having intended, in the purchase of the property in question, to divest himself of the relation and trust of administrator. But we cannot, as we apprehend the law upon this subject, confirm or give effect to this intention. The transaction, if confirmed, would be in itself a devastavit. A valuable interest and right derived to the defendant from the testator, has been, by his contract with the assignees, * impliedly relinquished and defeated. An equitable interest, a covenant for a reconveyance of choses in action of the testator, which had vested in the defendant as administrator, the value of which, so far as the property now in question was concerned, is ascertained by the judgment recovered by him as administrator, have been wasted by himself, unless the effects collected and received in satisfaction are to be considered as assets in his hands, holden by the defendant, subject to the remaining debts of the testator, and the uses of his last will; and we must sanction a breach of trust, an'd allow it the peculiar advantages of an equitable title, to admit the exclusive claims of the defendant upon this property. These are, therefore, to be disre *317 garded, whatever may have been the intentions of the defendant in purchasing, or of the assignees of Thomas Boylston in their sale and assignment of the property in question.
The other objection, which was insisted on in the argument for the defendant, and upon which his liability in this action has been further questioned and disputed, is suggested by some of the averments in the plaintiff’s surrejoinder. It may be doubted, however, as the pleadings stand, whether a defence of this kind is open to the defendant, after setting up in his rejoinder an exclusive right in the property collected, as an answer to the plaintiff’s action. But, upon this point, it may be admitted that, although the action were maintainable in form for the plaintiff, yet, if it now appeared upon the whole record, that a judgment therein would not. avail to any beneficial or suitable purpose, this objection alone is to be re garded as a sufficient cause for a stay, at least, of the proceedings.
It is apparent, then, from the manner in which the writ in the case at bar is endorsed, and from many of the circumstances disclosed in the pleadings, that the judge of probate of the county of Suffolk is plaintiff in this action, in his official character, without any other interest, and *that the inhabitants of the town of Boston are the persons at whose promotion this suit is prosecuted, or who may be supposed to have any beneficial interest in the decision or event of it. No other interest in the suit is disclosed ; and their interest is derived altogether from a residuary bequest in the last will of Thomas Boylston. It is also averred in the surrejoinder, that long before, as well as at the time of his death, this testator had been and was resident in England; that there his last will has been since proved and allowed in the Prerogative Court of the archbishop of Canterbury, where letters of administration, with this will annexed, have been granted to this defendant.
It must be understood, therefore, as a matter of necessary inference, if it is not directly asserted, that the testator’s place of domicile was in England; and that his effects were in a due course of administration there, before the allowance of the same will, and the registry thereof in the Probate Court of the county of Suffolk, or the letters of administration therewith granted to the defendant, to be exercised within this jurisdiction; where, and upon which occasion, the bond was required of the defendant, which is to be enforced in this suit.
These facts and circumstances are also to be considered with a due regard to the general principles which have been urged upon the attention of the Court, and to which we shall readily adhere, as they have been heretofore recognized and adopted in the decisions *318 of this Court. (6) The rights of legatees, especially of residuary legatees, as well as of the next of kin in a case of intestacy, depend upon the laws of the country where the deceased had his home and domicile, from whom the bequest or succession is claimed ; and to that purpose all the choses in action and personal effects are to be deemed local, to be there accounted for and finally administered, wherever collected, or accruing in possession to the executor or administrator.
The administration granted within this state has been justly styled ancillary, in respect to the administration in * the jurisdiction of the Prerogative Court. The defendant has an authority to collect and to pay debts, and is liable for the contracts and duties of the testator, recoverable, and which may be enforced, within this jurisdiction ; but is not liable in the Court of Probate, upon any partial account to be there rendered and adjusted, to a decree either of payment or of distribution, whether for a legacy, or to any claiming by a supposed succession of the deceased’s effects.
Thus far the argument for the defendant may be adopted ; but it is no necessary consequence that this action is not to be maintained, even at the promotion of a legatee named in the last will, with which the defendant’s administration is connected, to the effect of compelling an inventory, or an account of assets, collected by the defendant by virtue of his authority to administer within this jurisdiction. The bond in which the defendant is holden is a lawful bond, taken according to the directions, or within the intent, of the statute of 1785, which provides “for the filing and recording of wills proved without this government,”—in short, the provision of law,, in which the defendant’s authority to collect the effects of Thomas Boylston within this state originates.
When a will proved in any foreign state or kingdom is directed, upon due proceedings, to be filed and recorded in any Probate Court of this government, the judge of probate may thereupon proceed to take bonds of the executor, or grant administration of the testator’s estate lying in this government, with the will annexed, and settle the estate in the same way and manner as by law he may or can the estates of testators whose wills have been duly proved within the government Letters testamentary or of administration are not to be granted, but upon a bond to account. Every administrator, before he enters upon the execution of his trust, is to give a bond to this effect, among other things.
*319 * Upon the ground resorted to in the argument for the defendant, bonds taken of executors, or upon an administration granted, in the case of a will proved in a foreign state or kingdom, would be generally nugatory and of no effect, and indeed without any meaning or purpose, in every case where the testator had his domicile abroad; if the just construction be, that the judge óf probate is incompetent to sue for the purpose of obtaining an inventory and account of the effects collected within this government.
In ordinary cases, there would be no doubt of the competency and authority of the judge of probate to sue for the penalty of an administration bond, where an administrator had refused or neglected to account upon oath for such property of the intestate as he had received. This was formerly questioned, and the authority of judges of probate was supposed to be restrained by the provisions of the statute of 1786, c. 55, for regulating the proceedings on probate bonds in the courts of common law. In the appeal already mentioned to have been decided in the Supreme Court of Probate, the objection to an action upon a probate bond, in this view of it, was anticipated and fully considered; (7) and it is in consequence of the decree then pronounced, that this action has been brought and prosecuted. The grounds of that decision have been carefully reviewed ; and the construction there given of the provisions of the statute respecting suits upon probate bonds is, we think, correct. And we see no cause to distinguish this case from any other, in which the judge of probate is called upon, in the exercise of his judicial discretion, and of the authority he is invested with, for the use and benefit of whoever may be concerned, to enforce a bond of administration for the purpose of procuring an inventory or account of assets.
It may be received as a reasonable construction, in a general view of this subject, that, in every case designated, * where the requisite steps have been pursued, according to the provision of the statute, the administration bond is to be considered as virtually assigned to the party interested, thus proving his interest. (8)
But there are other cases, in which the original authority of the judge of probate remains unimpaired; and in which suits are to be commenced and prosecuted by virtue of decrees and orders established in the Probate Court; and which are not to be sustained, unless in that manner authorized and avowed.
The case at bar is of the latter description; and the jurisdiction *320 here exercised for this special purpose does not interfere with, but is still auxiliary to, the jurisdiction, where probate of the last will of Thomas Boylston has been granted, and the administration of his effects is pending — a jurisdiction admitted to be exclusive, in whatever concerns the final settlement of his estate, the ascertaining of the residue after payment of the debts, and the appointment and distribution thereof.
But then it is obvious, and it will be understood as the principal ground of this decision, and the reason which disposes the Court to sustain this action, that this is not a case in which the supposed residuary legatees are to have an execution immediately, and in their own names, for the sum in which the defendant shall be awarded to be chargeable and accountable ; or for the penalty of the bond, in case the defendant is not entitled to any relief against the forfeiture, by the aid of the chancery powers of this Court.
We are at present inclined to the opinion that the defendant is entitled to this aid, under the particular circumstances of this case ; but as it is understood that a hearing in chancery will be assented to, and that nothing more will be insisted on against the defendant than an account of the assets received, in which a fair allowance of disbursements will be acceded to on the part of the supposed residuary * legatees, it is unnecessary to express an opinion as conclusively formed upon this point in tne cause.
Upon the whole, the defendant’s refusal to acknowledge, as assets in his hands as administrator, and to account for, the effects received and collected upon the judgment recovered by him against the executor of the last will of Moses Gill, deceased, confessed by the pleadings, is a forfeiture of the bond declared on ; and the defendant’s rebutter is adjudged bad and insufficient in law.
The ill state of Judge Sedgwick’s health, for a long time preceding his lamented death, may be mentioned as the principal occasion of the unusual delays which have occurred in the progress of this suit to a final decision; two other members having withdrawn themselves, because of their supposed liability to an imputation of interest. This cause has been thus necessarily decided with less aid in the discussion than is peculiarly desirable, where questions of a novel impression arise, and to the decision of which important consequences are attached, (c)

 Com. Dig. Assignment, C. 1. — 1 D. & E. 26, 619. — Ca. Ch. 169.

 2 Vern. 692, 765.

 In Orr & Al. vs. Amory, (11 Mass Rep. 25,) it is said the law has been so settled; although, in Goodwin vs. Jones, (3 Mass. Rep. 517,) directly the contrary was laid down as law; and again, in Ingraham vs. Geyer, (13 Mass. Rep. 146,) the doctrine advanced in Goodwin vs. Jones is reasserted. — See Bind & Al. vs. Caritat, 2 Johns. Rep 342. —In Alivon Al. vs. Furnival, (1 Cr. Mec. Rosc. 296,) where two of three syndics of a French bankrupt brought a suit in an English court, they having power by the law of France, in their courts, to sue without joining the third, Park, B , in delivering the opinion of the court, said, “ This is a peculiar right of action, created by the law of that country, and we think it may, by comity of nations, be enforced in this, as much as the right of foreign assignees, or curators, or foreign corporations, appointed or created in a different way from that which the law of this country requires.” — Dutch West India Company vs. Moses, 1 Str. 612. — National Bank of St. Charles vs. Barnales, 1 R. & M. — Solomon vs. Ross, 1 H. Bl. 131, note. — Sed vide Picquet vs. Swan, 3 Mason. 469. — Ed.]

 Com. Dig. Bankrupt, D. 24. — Skin. 232. — See Lovelace. 47. — Shep. Touch. 197

Doug. 170, Le Chevalier vs. Lynch.

b) [Blake vs. Williams and Trustee, 5 Pick. R. — Sed vide Holmes vs. Remsen, 4 Johns. Ch. Ca. 460. — 2 Kent, Com. 329.—In Goodwin vs. Jones, (3 Mass. Rep. 514,) *314 Parsons, C. J., said, “The assignment of a bankrupt’s effects maybe considered as his own act, as it is in execution of laws by which he is bound, he* himself being competent to make such assignment, and voluntarily committing the act which authorized the making of it ” But in Blake vs. Williams and Trustee, the Court seem to have held a different doctrine. The opinion of Kent, Chancellor, in Holm.es vs. Remsen, is most easily maintained upon prlnniole and analogy. — Ed.]

 Com. Dig. Administration, B. 10, 13, C. 1. — Dyer, 2. — Mo. 2.—Kel. 62. — 1 Salk. 156.— 27 H. 8, 6, a. —1 Vern. 39, 336, 464, 476. — Com. Dig. Assets, B. C— Ibid. Chancery.—1 Leon. 225.— Rol. 921.— Cro. Eliz. 810.—1 Co. 98. — Godb 29. — Fitz. 91 —Plowd. 292.

8-8"> 8 Mass. Rep. 506, Richards, Administrator, vs. Dutch & Al. — See also 2 Bos. & Pull. 229, in notis, Bruce vs. Bruce.

 4 Mass. Rep. 33 8, Selectmen of Boston vs. Boylston.

 See Burns's Eccl. Law, 230, &c., cites 1 Salk. 316. — 3 Atk. 248. — Sim. 1137.

 [Vide Selectmen of Boston vs. Boylston, 2 Mass. Rep. 387, and 4 Mass. Rep. 324. —Goodwin vs.Jones, 3 Mass Rep. 514. — Richards vs. Dutch, 8 Mass. Rep. 506.— Stevens vs. Gaylord, 11 Mass. Rep. 256. — Sed vide Dawes vs. Head, 3 Pick. Rep. 128. — Harvey vs. Richards, 2 Gall. 555. — 2 Kent. Com. 344. — Decouche vs. Savelier, 3 Johns. Ch. Rep. 310. —Dizon vs. Ramsay, 3 Crunch, 319. — United States vs. Crosby, 7 Crunch, 315.— Ed.]