SAMUEL P. P. FAY, Judge, &c. *vs.* THOMAS HAVEN & others.

If an administrator of an estate represented to be insolvent neglects to render and settle his account in the probate court, within the time prescribed by the Rev. Sts. c. 68, § 25, he and his sureties are liable to nominal damages at least, in a suit on his administration bond, although he was not cited by the judge of probate to render an account

The assets, received by a foreign executor or administrator in the State where the testator resided, are to be administered in that State ; and though such executor takes administration here on the testator's estate within this Commonwealth, yet he is not held, by reason of such assets, to pay debts due to his testator's creditors here, although he has paid all the debts which the testator owed elsewhere, and has a sufficient balance in his hands to pay the debts due here.

Where a foreign executor or administrator takes administration here on the testator's estate within this Commonwealth, which consists of intestate real estate only, and he applies for license to sell it for payment of debts due to the testator's creditors here, and the court refuses to grant the license, such creditors have no claim on the administrator here for payment, but must resort therefor to the place of principal administration.

DEBT on a probate bond, dated September 1st 1835, given by Thomas Haven, as principal, and the other defendants, as

sureties, for the faithful performance by Haven of his duties as administrator of the estate of Samuel Livermore, late of New Orleans in the State of Louisiana. The parties submitted the case to the court on the following facts :

The deceased left real estate in this Commonwealth. On the day of the date of the bond, Haven, on his own application, was appointed administrator. He gave notice of his appointment, in the usual form, and filed an inventory of the property of the deceased in this Commonwealth, regularly taken, showing real estate to the amount of $ 6300, but no other property. On the 10th of October 1837, he represented the estate to be insolvent ; whereupon commissioners to receive and examine the claims of creditors were appointed, who gave notice according to the order of the judge of probate, and allowed two claims only ; viz. to Alpheus Smith, $ 1283·65, and to Thomas Cordis $ 3485·59 — total, $ 4769·24 — and made their return to the probate court, on the 11th of July 1838. Said Smith and Cordis were citizens of Massachusetts, and their said claims remain wholly unsatisfied.

Said Haven has not settled nor exhibited any account of his administration, and no decree of distribution has been made ; nor has he applied to the court of probate for an extension of time for the purpose of rendering an account.

The said Livermore was a citizen of Louisiana, having long had his domicil in New Orleans. By his olographic will, duly executed according to the laws of Louisiana, he appointed said Haven and one Ogden as his executors, and disposed of his property — giving a legacy of books to Harvard College ; an annuity to his sister ; a legacy of $ 2000 to said Haven's wife ; certain other legacies to other persons ; part of the real estate in this Commonwealth to five half sisters ; and all the residue of his estate to the children of said Haven. Said will was not attested by any subscribing witness, and was and is inoperative as a devise of real estate in this Commonwealth. One clause in said will directed so much of the testator's real estate to be sold, as might be sufficient for the payment of all his debts, and the whole to be sold at a favorable period. The will was duly

proved and allowed, and the said executors accepted the trust, and have paid the legacies. On the 17th of November 1833, an inventory of the effects of the deceased was filed in the probate court of New Orleans, exhibiting property (principally real estate) to the amount of $260,148. There were numerous mortgages on the estate, and the debts of the deceased amounted in all to $235,471. The executors, from time to time, under the authority of said court, made large sales of real estate in New Orleans, for the payment of said debts. Said Haven, before or immediately after he received letters of administration in this Commonwealth, knew that there were creditors of said deceased resident here. Said Alpheus Smith (one of the creditors) demanded payment of said Haven, and was told by him, that if he would present his claim at New Orleans, he would be paid ; to which said Smith replied, that having a mortgage or claim on the real estate here, he should not send his claim to New Orleans. On the 6th of February 1835, said Haven, on his own application, was appointed, by the probate court of New Orleans, tutor to his minor children, nine in number, residuary legatees under the aforesaid will ; and Peter Laidlaw was appointed under-tutor. The sale of real estate in New Orleans by the executors was not completed until March 28th 1835. On the 6th of April 1835, the account of the executors was presented and homologated by the said court. On the 5th of June 1835, (the attorney, appointed by said court for absent heirs, consenting,) Ogden, co-executor, on his petition, setting forth that the year of executorship had expired, was discharged from his trust, and the unsold property belonging to the estate was ordered to be delivered over to said Haven, tutor, &c. — administration thereof to be continued by him ; and he, acting as tutor to said minors, petitioned said court for license to sell the remaining real estate in New Orleans, amounting, as inventoried, to $985.92, for the payment of debts still unpaid, and such debts as should thereafter come to his knowledge ; and on the 20th of February 1835, he was licensed to sell accordingly, and did thereafter sell said real estate. In August 1834, said Haven removed from Philadelphia, where he had been domiciled for several years,

to Boston, and resided constantly at said latter place until after
the commencement of this suit.   The residuary legatees have al-
ways heretofore lived, and now live, in the family of said Haven.
No bonds were given by him, or any other person, as executor
of the deceased, or tutor or guardian of the residuary legatees ;
and he has received a sum exceeding, by more than $20,000,
the amount of debts, legacies, and expenses incurred, from the
proceeds of the above mentioned sales and collections made by
him at New Orleans.

Said Haven, as administrator within this Commonwealth,
petitioned the judge of probate for license to sell the real estate
situated here, for the payment of debts, and a decree was passed,
on the 16th of August 1836, granting such license.   An appeal
from that decree was taken by the heirs at law, or some of them,
and in January 1840, this court reversed that decree, on the
grounds stated in the report of the case.   23 Pick. 116.

For such provisions of the law of Louisiana as may be applica-
ble to the case, reference is to be had to the *Civil Code* of that
State, as published by authority in 1838, and to the reported
judicial decisions in that State.

It was agreed, that if upon these facts the court should be ·
of opinion that this action could be maintained, the defendants
should be defaulted, and damages be assessed by the court ;
otherwise, that the plaintiff should become nonsuit.

The argument was had at Boston, January 29th 1841.

*B. Rand & S. Ames,* for the plaintiff.

*Dexter & Robinson,* for the defendants.

DEWEY, J.   That this action may be maintained for such a
breach of this bond, as will authorize a judgment for nominal
damages, seems to us to be very clear.   The Rev. Sts. *c.* 68,
§ 25, authorize such action, " if any executor or administrator
shall neglect to render and settle his accounts in the probate
court within six months· after the return made by the commis-
sioners, or after the final liquidation of the demands of the credi-
tors, or within such further time as the judge of probate shall
allow therefor, so as to delay a decree of distribution."   The
acts stated in the case show such neglect of the administrator

to render and settle his accounts within the time limited by the statute.

It was suggested by the defendants' counsel, that an executor or administrator is not liable to an action unless he has neglected to render and settle his account, after having been first cited by the judge of probate to render it. Such is the provision of c. 67, § 9, providing the remedy for neglect to render and settle the accounts of administrators in cases of solvent estates ; but we think it does not apply to cases like the present, which seem to be specially provided for in c. 68, § 25, and where the mere neglect to render the account, within the period prescribed by the statute, subjects the administrator to a suit, without any previous citation from the judge of probate.

The question of more difficulty in the present case is that which arises upon the claim of the plaintiff, in behalf of the creditors in Massachusetts, to hold the defendant responsible upon this bond for certain property of said Livermore, deceased, which came into the hands of said Haven, (the principal in this bond,) in the State of Louisiana, by virtue of his appointment as one of the executors of said Livermore, and his subsequent appointment, by the court of probate there, as tutor to his children, who were legatees under the will.

By the facts stated by the parties, it appears, that Samuel Livermore had been for many years a resident in New Orleans, and had his domicil there at the time of his decease ; that said Haven and one Ogden were constituted executors of his will and duly authorized to act, as such, under the laws of Louisiana, and that the property, for which it is now attempted to make the defendants chargeable, on the bond, to the plaintiff as judge of probate for the county of Middlesex, is the avails of certain personal and real estate, which came to the hands of said Haven in the State of Louisiana, under the authority of the probate court of New Orleans, received and held by him, either in the capacity of executor in Louisiana, or as a tutor legally constituted there, to hold the same for the benefit of his children, or to a small amount, held as payment of a legacy to his wife under the said will. No specific property of said Livermore is or has

been in the hands of said Haven in this Commonwealth, except the valuable collection of books received by the corporation of Harvard College, by virtue of a specific bequest to them by Mr. Livermore, (and which the executors transmitted from Louisiana,) and certain real estate which was duly returned in the inventory taken here.

It is very obvious that the disposition of both the personal and real estate of Livermore, the avails of which came to the hands of Haven, was to be regulated by the Laws of Louisiana ; personal estate being always to be disposed of according to the *lex domicilii*, and the real estate oy the *lex loci rei sitæ*. Story's Conflict of Laws, 403, 404. The administration granted in Massachusetts was merely ancillary, and the only duty devolving upon such administrator would be to collect the assets here, and appropriate so much of the avails of the same to the pay ment of debts due to our citizens, as would be authorized by the general solvency or insolvency of the estate of the deceased, and remit the balance to the place of principal administration. *Davis* v. *Estey*, 8 Pick. 475. It has been, I apprehend, the uniform doctrine of this court, that any other administration, than that granted where the deceased had his domicil, must be considered as an ancillary administration. *Stevens* v. *Gaylord*, 11 Mass. 256. Such ancillary administrator would not be obliged to account here for assets received in the place of principal administration, although he had filed a copy of the will and taken letters of administration in this Commonwealth. *Selectmen of Boston* v. *Boylston*, 2 Mass. 384. *Campbell* v. *Sheldon*, 13 Pick. 23. But, contrary to this doctrine, it is now contended that the administrator may be required to account, at the place of the ancillary administration, for the property of the deceased which was found at the place of his domicil and principal administration, for the purpose of subjecting it to the payment of debts due to creditors in Massachusetts ; and this too after the property has been changed in its specific character, and the proceeds thereof have been, by order of the probate court in Louisiana, vested in the defendant, Haven, in another and different capacity from that of executor

The position, thus urged by the counsel for the plaintiff, seems, as already suggested, at variance with the principles which are recognized by the authorities already cited, as well as other cases that may be referred to. *Richards* v. *Dutch*, 8 Mass. 506. *Dawes* v. *Boylston*, 9 Mass. 337. *Jennison* v. *Hapgood*, 10 Pick. 78. *Vaughan* v. *Northup*, 15 Pet. 1.

The rule seems to have been very generally sanctioned, that as to the property in the hands of the executor or administrator, acquired without the jurisdiction of the principal administration, he is to be held accountable for its proper application only to the legal tribunals of the State in which the principal administration was taken

The questions which have been sometimes raised, and which have been of more difficult solution, have been as to the authority of the ancillary administrator to retain and apply the property, received within his local jurisdiction, to the payment of debts or legacies due to creditors and legatees residing within that jurisdiction.

Some reliance was placed by the counsel for the plaintiff upon the decision of the supreme court of New York, in the case of *Campbell* v. *Tousey*, 7 Cow. 64, where it was held, that if a foreign executor, coming into that State, without filing a copy of the will and taking an appointment under the authority there, should intermeddle with the goods of the deceased in New York, and thus make himself an executor *de son tort*, he should also be charged with the assets remaining in his hands, though received in a foreign country. This decision, as well as the general question of conflicting administrators, is considered by Mr. Justice Story, in his learned commentaries on the Conflict of Laws, 424 – 429. He doubts the correctness of the decision in *Campbell* v. *Tousey*, and says " there is great difficulty in supporting it, to the extent of making the foreign executor or administrator liable, in such State, for assets received abroad and brought into the State by him. It is not easy to perceive how he can be sued in such State for assets in his hands received abroad under the sanction of a foreign

administration, and by the authority of the foreign government to which he is accountable for all such assets."

It seems to be highly reasonable and proper that the accountability of the administrator, for all assets received under an appointment in one State, should be exclusively under the laws and judicial decisions of the State conferring upon him the power and authority to act in this behalf; and that all questions as to the faithful or unfaithful discharge of his duties as such administrator should be limited to the same local jurisdiction. If it were not so, obviously great confusion would arise, and conflicting decisions might be made, requiring inconsistent duties of the administrator Nor can we think that the omission in the statutes of Louisiana, of the requisition of bonds from the administrator for the faithful discharge of his trust, can vary the general principle. The nature and extent of the security to be given in such cases must necessarily be regulated by the local law. We are to presume that such laws are in force in Louisiana, as furnish reasonable security to the parties in interest, and that in some form, through the aid of legal process, the avails of the estate of one deceased may be reached, or the executor be restrained in any attempt to withdraw the same, or to place himself beyond the jurisdiction of her courts, while his liabilities to creditors are undischarged. Indeed the records of the court of probate of New Orleans, in this case, and the civil code of Louisiana, to which we have been referred, both show various proceedings in the cases of settlement of estates, having for their object the proper application of the assets to the payment of the debts of deceased persons. The remedy, it is true, may be lost by delay or laches of the creditor in enforcing his claim, and the proceedings may be closed in a shorter time than would be consonant with the laws of Massachusetts; but this cannot affect the general principle as to the liabilities of the foreign administrator in our courts.

Upon the whole matter, the court are of opinion that the defendants are not liable upon this bond to the judge of probate in this county, for any assets received in the State of Louisiana; the property thus received having been already administered

upon in that State. If the settlement of the estate is not closed there, proceedings may be instituted there against the legal representatives to enforce any valid claims existing on behalf of creditors. If not enforced in due time, the creditors may have ost their remedy by their own laches.

The books in possession of Harvard College were transmitted to the donees from Louisiana, and the estate at the place of principal administration being solvent, they were properly transmitted by the executors, agreeably to the bequest of the testator ; and this being a proper and legal disposition of them under the authority and laws of Louisiana, they are not assets to be accounted for by the administrator in this Commonwealth.

The administrator is not to be charged with the real estate re turned in the inventory, or be made liable by reason of any neglect to procure license to sell the same ; this court having, upon an application duly made by him for such license, refused to grant it. *Livermore* v. *Haven*, 23 Pick. 116. The result is, therefore, that the plaintiff is entitled to a judgment for only nominal damages.