HORACE G. HUTCHINS, Administrator *vs.* PRESIDENT, DIRECTORS, &c. OF THE STATE BANK.

A testator in New Hampshire, who owned shares in a bank in Boston, made the following bequest to his wife, whom he made executrix of his will : " All the property, both real and personal, that I am possessed of, during her life, except my farm in the town of W. No part of the bank stock is to be disposed of, unless her comfort should require it; but it is to be apportioned to my relations, according to her discretion, to be enjoyed by them, after her decease : " She caused the will to be proved in New Hampshire, and gave bond as executrix, but never caused the will to be allowed and recorded in this State, according to the provisions of *St.* 1785, *c* 12, and Rev. Sts. *c.* 62 : She also gave a power of attorney to a citizen of Boston, authorizing him to sell the shares in the bank there, which were accordingly sold by him, and a transfer thereof was made to the purchaser, in due form, on the books of the bank : After the death of the executrix, the will was duly allowed and recorded in this State, and administration, with the will annexed, was granted to H., who brought an action against the bank, to recover the dividends on the shares, from the time of the said sale and transfer. *Held*, that the executrix, as such, had the legal power to convert the shares into money, without the aid of a probate court in this State, if she could do it without legal process; that the bank was not bound to see to the application of the proceeds, nor to decide whether her comfort required the sale; that if she had no authority to appropriate the proceeds to her own use, or if she sold the shares, when she ought to have retained them, she was guilty of a violation of official duty, for which her sureties were responsible on the probate bond; and that the action could not be maintained.

SHAW, C. J. The plaintiff sues, as administrator *de bonis non*, with the will annexed, of William Gardner, a citizen of Portsmouth, (N. H.) who died there, and whose will was proved there, in Rockingham county, in 1834, and letters testamentary were issued to Sarah Gardner, widow and executrix. After her decease, in 1845, the will was filed,

according to law, in this county, and letters of administration were issued thereon to the plaintiff.

The following is the only clause in the will which need be recited : " Having implicit confidence in my beloved wife, Sarah Gardner, I do hereby will and bequeath to her, the said Sarah Gardner, all the property, both real and personal, that I am possessed of, during her life, except my farm in the town of Wendell. No part of the bank stock is to be disposed of, unless her comfort should require it ; but it is to be apportioned to my relations, according to her discretion, to be enjoyed by them after her decease."

William Gardner, the testator, at the time of his decease, was the owner of one hundred shares in the capital stock of the State Bank, Boston, the certificate of which was at Portsmouth, and with his other effects came into the hands of his widow and executrix, and was duly inventoried by her, as part of his personal estate. From 1834, when she received her letters testamentary, to 1841, she received the semi-annual dividends, payable upon these shares ; and in the summer of 1841, by her attorney, Jacob Hall, she sold and transferred these shares, by a transfer entered on the books of the bank, and by a surrender of the certificate, which till then stood in the name of William Gardner, her testator.

This suit is brought to recover dividends which have accrued since the said transfer, upon the ground that this transfer by the executrix was void, that nothing passed by it, and that these shares have ever since remained a part of the assets of said Gardner's estate, and that the plaintiff, as administrator *de bonis non*, is entitled to hold them, and to claim the dividends which have accrued upon them.

The question is, whether, in permitting this transfer, made by the executrix of the will of the shareholder, proved in another State, accompanied by a surrender of the certificate, the bank were so negligent, or acted so much in their own wrong, that they are now obliged, without any equivalent or advantage to themselves, to stand responsible for the value of these shares

We are of opinion that the question does not depend upon the particular provisions of the will ; upon the question whether, in point of fact, the proceeds of these shares were required for the comfortable support of the widow ; but upon the power of an executor of a will, originally proved in the State of the testator's domicil, and who has the securities and muniments of title, to collect and receive the goods, debts, choses in action, and personal property of the testator, in another State. The bank must be presumed to know what are the legal powers of an executor ; but they cannot be presumed to know the particular provisions of each will. And if an executor has a power to transfer shares, they are not bound to see to the application of the proceeds, much less to decide, as a matter of fact, and at their own peril, what are the wants of the widow, or any other legatee. For aught they can know, all the assets of the estate may be required for the payment of debts ; and if so, the executor is bound so to apply them, without regard to any legacies, or any other particular provisions. It is the duty of the executrix to administer the estate according to the lawful directions of the will ; and to the performance of this duty she is bound by her bond to the judge of probate. If she had no authority to appropriate the proceeds of this sale, in whole or in part, to her own use, under a just construction of the will, or if she sold these shares, when, by the terms of the will, she ought to have retained them, these were violations of official duty, for which she and her sureties were responsible on the probate bond. This affords a security that the legal powers of an executor, derived from the will and letters testamentary, cannot be abused to the injury of another, without adequate means of redress.

Certain rules and principles respecting the powers of an executor, we think, are settled beyond controversy. One is, that if an executor or administrator have occasion to prosecute any suit, in that capacity, in any of the courts of this Commonwealth, he must be authorized by letters testamentary, or letters of administration, from some probate court in this State. Without it, he has no standing in court *Pond* v

*Makepeace*, 2 Met. 114. And if a will is originally proved in another State, ample provision is made by statute, for giving it full effect here, to the same extent as if it were an original will. Rev. Sts. c. 62, §§ 17, 18, 19. Section 32 of the same chapter provides that " no will shall be effectual to pass either real or personal estate, unless it shall have been duly proved and allowed in the probate court ; and the probate of a will devising real estate shall be conclusive as to the due execution of the will, in like manner as it is of a will of personal estate."

It was argued from the first part of this section, that every will, before having any effect to pass property, must be proved in a probate court of this State. But neither the terms of this clause, nor its connexion with the sections respecting foreign wills, require or admit this restriction. It does not seem intended to change the law upon the subject of wills proved elsewhere, but rather, like the other part of the section, to give the sanction of positive law to rules which were before received and practised on. *Dublin* v. *Chadbourn*, 16 Mass. 433. *Shumway* v. *Holbrook*, 1 Pick. 114.

Another well settled rule of law is, that when it is necessary to make title to real estate, through the official act of an executor or administrator, it must be by letters testamentary or letters of administration, from some probate court in this State ; because titles to real estate must be regulated, governed and established, by the *lex loci rei sitæ*. *United States* v. *Crosby*, 7 Cranch, 115. *Kerr* v. *Moon*, 9 Wheat. 565. Thus it is held that a foreign executor or administrator cannot assign a mortgage of property situated in this Commonwealth, so as to make title to the assignee. Such a mortgage, though in many respects a pledge for a debt, is also a conveyance in fee to the mortgagee ; and an assignment of the mortgage is a conveyance of real estate to the assignee. *Cutter* v. *Davenport*, 1 Pick. 81. And where it is necessary to make title to real estate, through the deed of an executor or administrator, executed under a license or power by will, we think it must be done by an executor or administrator

constituted by a court of probate within the State. In New York, it was held by Chancellor Kent, in the case of *Doolittle* v. *Lewis,* 7 Johns. Ch. 45, that when a mortgage of real estate in New York had been made to a creditor in Vermont, with a power to the mortgagee, his *executor,* administrator or *assigns,* to sell the land for the non-payment of the debt, this power might be executed by an executor constituted by a court of probate in Vermont, inasmuch as the power was given by deed, and the letters testamentary, in Vermont, merely designated the person to execute the power, and that the estate passed by force of the original deed, and that an administrator in Vermont fulfilled the description. Whether the law would go to that extent here, may perhaps be questioned. It is unnecessary, however, to consider that point. But it was a necessary part of the adjudication in that case, that the executor in Vermont had the control of the debt, and a power to collect and discharge it, if he had no occasion for the aid of the courts of New York.

We think the general rule of law is, that where a will has been proved, and an executor has received letters testamentary in the State of the testator's domicil, the goods, chattels, choses in action, and generally the personal property of the intestate, vest in the executor. He holds them *in auter droit* certainly, and is bound to inventory them and account for them; but still he has the legal interest in them, and the custody and control of them. 7 Johns. Ch. *ubi sup. Dawes* v. *Boylston,* 9 Mass. 337. *Rand* v. *Hubbard,* 4 Met. 252. *Woolley* v. *Clark,* 1 Dowl. & Ryl. 409, and 5 Barn. & Ald. 744. If, therefore, such an executor can take possession of goods or effects, in the hands of a bailee of his intestate in another State, by the voluntary act of such bailee, or if he can collect a debt due from a debtor in another State, without the necessity, in either case, of commencing a suit, he has authority to do so, and may give a good acquittance and discharge. This proposition is to be taken with the qualification, that such property is received, or such debt paid, before the will is filed, or letters of administration are issued, in the

State where the bailee or debtor lived.   What would be the effect of such an appointment, whether it would or would not suspend or supersede the power of the original executrix, it is not necessary to consider in the present case ; and we give no opinion.

With these views, the court are of opinion, that the defendants, the State Bank, were authorized and justified in paying the dividends due on these shares, before the transfer, to Mrs. Gardner, the executrix.   Indeed, that is not contested in the present case.   And we think the power to transfer the stock stands on the same footing.   If a share in a bank is not a chose in action, it is in the nature of a chose in action ; and what is more to the purpose, it is personal property.   A state bond or note, a certificate of a sum due from the State or United States, and ordinarily called ' stock,' is a chose in action,. and an evidence of debt, though ·no action lies for it. So a certificate of bank shares is proof of a definite aliquot part of a money fund, created for a particular purpose, and placed under the management of a corporation regulated by law.   And a certificate of stock is a muniment of title of the same nature with the note or bond of a private person, ordinarily called a ' chose in action,' or of a State or United States bond, note, or certificate of debt.   We think, therefore, that upon the surrender of this certificate by Mrs. Gardner, who was a rightful holder, and a transfer by her on the books of the bank, the right to the shares was duly transferred, and they ceased to be assets.of the estate of the testator, before the plaintiff became administrator with the will annexed.

It has been decided, that though the by-laws of the bank require a transfer on the books of the bank, in order to complete the title, yet that an assignment of shares by deed vests the entire equitable and beneficial interest in the assignee, and authorizes him to demand a transfer at the bank.   *Sargent* v. *Essex Marine Railway Corporation*, 9 Pick. 202.   *Eames* v. *Wheeler*, 19 Pick. 442.   But no question of that sort arises here, because the transfer was made on the books of the bank,

and was made voluntarily by them, in manifestation of which, they accepted the surrender of the outstanding certificate, and issued a new one to the purchaser. This answers another objection, which was, that as the bank was a corporation, created by the laws of Massachusetts, the corporation and its shares had a local character, and must in all respects be governed by the laws of Massachusetts. But all the laws of Massachusetts, affecting the question, were complied with. The stock was transferred, in the mode required by the charter and by-laws, by one rightfully holding the certificate, and the beneficial interest expressed in it. Had the bank declined voluntarily making this transfer, and it had become necessary for the executrix to institute legal process, in her representative character, she must have clothed herself with the necessary authority, by an act of a probate court in this Commonwealth. But no such necessity existing, and the bank consenting to the transfer, we think the case stands upon the same footing as that of the voluntary payment of a debt, or a voluntary delivery of goods by a depositary, in this State.

The last ground of suggestion against the validity of the transfer in question was, that the executrix was herself acting under a delegated authority, and therefore could not delegate her own power. This is founded on a technical rule and maxim, which is correct, but held within very strict limits. The answer is, we think, that she did not execute a delegated power, but a large legal authority, and an incidental power, as owner of the property; owner *in auter droit.* Otherwise, every act of an executor must be done personally.

On the facts agreed, the judgment of the court must be fo the defendants.

*Goodrich,* for the plaintiff.

*C. G. Loring & G. W. Phillips,* for the defendants.