JUAN LUIS DAMMERT and Others, as Ancillary Execu-
tors of JOSÉ SEVILLA, Deceased, Respondents, v.
WILLIAM HENRY OSBORN and Others, Appellants,
Impleaded with Others, Defendants.

*Testator — trusts valid at the domicile of a foreign testator, but void under the laws of
New York — the assets should be remitted to the foreign country for distribution.*

José Sevilla, a resident of Peru, died at Lima, Peru, leaving a will by which he
gave $500,000, or securities of that value, to found in New York city an institu-
tion to be known as the Sevilla Home for Children. Much of his personal estate
was, at the time of his death, in New York city, where ancillary letters were
issued under the Peruvian will. Having retained sufficient securities to satisfy the
testator's project for the establishment of a home, the ancillary executors brought
an action for the construction of the will.

The provisions of the will relative to the Sevilla Home were void by the laws of
New York, but valid by the laws of Peru, and the trial court declined to determine
the title to the fund, or aid in the enforcement of the trust, and directed the
ancillary executors to remit the fund to Peru in order that its courts might
determine in what manner and to whom it should be distributed.

*Held,* that the judgment was proper.

*Despard* v. *Churchill* (53 N. Y., 198) followed.

That the question whether the courts of this State should decree distribution of
assets collected in the State under ancillary letters granted here, or should remit
the assets to the courts of the testator's domicile, was not a question of jurisdic-
tion, but was one of judicial discretion.

That, in the case at bar, this discretion had not been abused, especially as certain
clauses of the will of the testator seemed to contemplate that the New York
assets should be remitted to Peru for distribution.

That the reluctance of our courts to administer upon assets of a testator having a
foreign domicile, where such administration would have the effect of executing
a trust invalid by our laws, furnished a further reason why the assets in question
should be remitted to the courts of the testator's domicile.

*Cross* v. *United States Trust Company* (131 N. Y., 330) distinguished.

Appeal by the defendants, William Henry Osborne and others,
from a judgment of the Supreme Court, entered, after a trial before
the New York Special Term, in the office of the clerk of the city
and county of New York on the 17th day of March, 1892, which,
among other things, decided:

I. That the provisions made by the will of the testator for the
Sevilla Home for Children are void.

II. That the bequest of $500,000, in shares of that nominal value, did not vest in any ascertained persons or corporation.

III. That the persons named as philanthropic trustees in the will of testator are not entitled to receive the fund of $500,000, in shares of that nominal value, set apart as stated in the complaint, nor are any of them so entitled.

IV. That the provisions of the will of the testator for the Sevilla Home for Children are within the provisions of the statutes of this State prohibiting the creation of perpetuities and are void.

V. That the provisions of the will of testator do not constitute a bequest to the defendant, the Sevilla Home for Children.

VI. That the corporation known as the Sevilla Home for Children, defendant herein, is not entitled to receive the legacy bequeathed to the Sevilla Home for Children.

VII. That the subsequent creation of the defendant corporation did not create any rights in its favor to the fund in question.

VIII. That the ancillary executors account for the fund in question to the executors and appointed heirs in Peru and pay over the same, less the necessary deductions for costs and expenses, to said executors and heirs in due course of administration.

*C. C. Marshall* and *William G. Choate,* for the appellants Osborn and others, and the Sevilla Home.

*David Milliken, Jr.,* for the Sociedad de Beneficiencia.

*Frederic R. Coudert,* for the respondents.

O'Brien, J.:

José Sevilla, a resident of Peru, died at Lima, in that country, in December, 1886, leaving a will, whereby, among other things, he gave $500,000, or securities of that value at par, to found a home in the city of New York for orphan girls, to be known as the Sevilla Home for Children. The testator left an estate consisting largely of personal property, much of which, at the time of his death, was in the city of New York. The will of the testator was duly proved at Lima, Peru, and was subsequently recorded in the office of the surrogate of New York county under the order of said surrogate, and under the same order the executors were appointed ancillary executors of said will. They retained, out of the personal

estate collected by them in New York, securities sufficient to cover the bequest in favor of the home, and then brought this action for a construction of the will, and for the decree of the court as to who was entitled to said fund or securities, and to whom they should make payment of the same.

The learned judge below correctly held that the provisions of the will relating to the establishment of the Sevilla Home contravene our statute against perpetuities, and was invalid for the further reason that, at the time of the death of the testator, the persons upon whom the trust was to devolve were unascertained. He also correctly held that the provisions of the will relating to the home were valid under the laws of Peru. The question, therefore, presented was as to whether or not the courts of this State would determine the title to the fund primarily intended by the testator to be devoted to the establishment of the home. His conclusion was that this court should not aid in enforcing the trust, but decreed that the ancillary executors remit the fund to Peru in order that the courts of that republic may determine in what manner and to whom it shall be distributed.

In this determination he was controlled by the case of *Despard* v. *Churchill* (53 N. Y., 198), to which he referred and from which he quoted, which to him and to us seems to be a binding and controlling authority. A reference to the facts in that case will show how nearly it approaches to the question here presented. There a resident of California died seized of certain leasehold estates for years in lands situate in this State, and leaving a last will and testament void in its material provisions under the statutes of this State, but valid by the laws of California. A portion of the executors named in the will were residents of this State and these were charged with the care and administration of the property in this State. The learned judge writing the opinion in that case said :

" The testator had his domicile in the State of California. He made his will there. No question is made but that it is in all of its provisions valid by the law of that State. It, however, by its terms disposes of certain property in this State and by provisions which are invalid here, inasmuch as they run counter to our statute law. (1 R. S., 723, § 15 ; id., 773, § 1.) The statute law here referred to embodies the policy of this State in relation to perpetuities and

accumulations. As this sovereignty will not uphold a devise or a bequest by one of its citizens in contravention of that policy it will not give its direct aid to sustain, enforce or administer here such a devise or bequest made by a citizen of another sovereignty. (See *Chamberlain* v. *Chamberlain*, 43 N. Y., 424.) Yet it is no part of the policy of this State to interdict perpetuities or accumulations in another State. (Id., 434.)

     *       *       *       *       *       *

" Personal property is subject to the law which governs the person of its owner as to its transmission by last will and testament; and this principle, though arising in the exercise of international comity, has become obligatory as a rule of decision by the courts. (*Parsons* v. *Lyman*, 20 N. Y., 103,) And, as a general rule, the distribution of personal property, wherever made, must be according to the law of the place of the testator's domicile. (*Harvey* v. *Richards*, 1 Mason, 381–407.)

" The cases are not uncommon in which a testamentary disposition made in a foreign jurisdiction has controlled the transmission of personal property in this. Usually the administration of the estate has been committed by the will to citizens of that jurisdiction. They have acquired the possession and control of the property through voluntary payment or surrender, or by making probate of the will here have obtained ancillary letters testamentary, and under these have enforced collection or surrender. In such case, those charged with the administration are liable to account here for the assets collected by the authority granted here. It seems to have been generally held, that where there are domestic creditors of the estate payment of the debts may be decreed out of the assets. (*Dawes* v. *Boylston*, 9 Mass., 337; *Richards* v. *Dutch*, 8 id., 506; *Harvey* v. *Richards*, *supra*.) For other purposes, such as the payment of legacies and the distribution of the surplus to the next of kin, the courts in Massachusetts have held that the assets must be remitted to the place of the domicile. (See cases above cited.) But this has been questioned with great force and reason. (See *Harvey* v. *Richards*, *supra*.) And the better rule is, that whether the courts of one State are to decree distribution of the assets collected in it under auxiliary letters granted by them, or to remit the disposition thereof to the courts of the testator's domicile, is not a question of

jurisdiction, but of judicial discretion under the circumstances of the particular case. (*Harvey* v. *Richards*, *supra*; *Parsons* v. *Lyman*, *supra*.) Nor does the fact that, by the will in this case, the testator appointed citizens of this State as executors, as well as citizens of the State of his domicile, and charged those here with the care and administration of the property here, alter the rule. In *Harvey* v. *Richards*, above cited, the defendant was appointed, in this country, administrator, with the will annexed of a testator domiciled in the East Indies, where the executors resided.

" The question then arises, under the particular circumstances of this case, whether the assets in this State should not be remitted to the executors in the State of California to be administered, as they may be, in accordance with the directions of the will, under the laws of that State.

"As has been stated, the courts of this State may not directly aid in carrying out here a bequest which is in violation of its statute law, and contrary to a policy of which it is tenacious. And yet they may not hold the bequest void, when it is valid by the law of the State by which the disposition of the property is to be governed. The one would be to transgress the written law of this State; the other would be to disregard an unwritten rule of law, well settled and of extensive and frequent application."

It being, therefore, " not a question of jurisdiction, but of judicial discretion," as to whether, under the circumstances of a particular case, the courts of one State will decree distribution of the assets, or remit the disposition thereof to the court of the testator's domicile, it remains to be determined whether such discretion was wisely exercised in the present case.

We think, taking the various provisions of the will, that it was within the contemplation of the testator that his property outside of Peru should be remitted to that place for the purposes of administration. Thus, it was provided that the Sociedad de Beneficiencia de Lima should receive all the legacies of public interest, including the legacy for the establishment of the Sevilla Home, in order that the executors, in making payment of such public legacies, should not be called to deal with any other person or corporation than the said Sociedad. This latter society, however, is located in Peru; and whether we regard this provision as being inserted merely for the

convenience of Peruvian executors, or as a direction as to the course to be pursued only in event of all the assets being found in Peru at the time of the testator's death, it shows that he himself contemplated the scheme or plan of having the property administered in Peru through this association. In another part, provision is made for the payment of the expenses and a commission to such person as it should be necessary to send to the United States to make delivery of the gift to the Sevilla Home. This provision, to say the least, furnishes an argument in support of the view that it was the intention of the testator that his property should be administered upon, and the validity of the provisions of the will determined by the law and courts of Peru.

The reluctance, moreover, of the courts to administer upon the assets of a testator who, at his death, was a resident of a foreign domicile, particularly in a case where the carrying out of the intention of the testator would be to administer a trust invalid by the laws of our State, furnishes another reason why, in cases of doubt, the property should be transmitted to the foreign State. Ordinarily, it is no part of the duty of the courts of this State to construe wills of testators domiciled in foreign States, except as to provisions to be carried out in this State. And it will avoid confusion and conflict of jurisdiction, under such circumstances, to remit the property to the jurisdiction of the courts located in the domicile of the testator. This furnishes a reason why this court should not, as urged upon their attention by one of the appellants, proceed to determine the title to the fund intended for the home, and is a sufficient answer to the suggestion, even though we assumed another appellant's position to be right, that the effect of so transmitting the fund will be to have the same sent back again and delivered to the corporation which it is claimed now has the legal right to receive the fund under the laws of this State.

It is urged that the case of *Cross* v. *United States Trust Company* (131 N. Y., 330), favors the contrary view, and appellants claim that that went to the extent of holding that, as to foreign wills creating trusts of personalty, there is no public policy of this State which forbids the administration of such property here, though the trusts would be invalid by statute in a New York will as violating the rule against perpetuities. In that case, however,

*Despard* v. *Churchill* (*supra*), was analyzed and referred to with approval. Apart from this, the distinction between *Cross* v. *United States Trust Company* and this case is a marked one. In that case it was sought to have a trust relating to personal property in this State which was valid by the laws of the testator's domicile, declared void because a like trust, if created here by a citizen of our own State would have been invalid. This action seeks to have our courts decree that a trust because valid under the laws of the testator's domicile is equally valid here and should be carried out, though contravening our statutes.

The reason for remitting the subject to the testator's domicile is thus stated by the learned judge writing the opinion in *Cross* v. *United States Trust Company*: " This course was adopted not on the ground of policy, but because it was always the law in such cases to remit personal estate to the domicile of the owner in the exercise of a sound judicial discretion."

We do not think that more need be added to what has been said in the opinion of the learned judge at Special Term; nor have we attempted to do more than to examine the record, and, in effect, adopt the reasons given by him to justify his conclusion and which we think should result in the affirmance of his decree by this court.

Judgment affirmed accordingly, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concurred.

Judgment affirmed, with costs.